UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATTHEW J. FECTEAU,

                        *Plaintiff,*

    v.

SAFETY NATIONAL CASUALTY
CORPORATION, *et al.*

                        *Defendants.*

No. 25-CV-3821 (KMK)

<u>ORDER & OPINION</u>

<u>Appearances</u>:

Matthew J. Fecteau
Mount Vernon, NY
*Pro Se Plaintiff*

Melissa Kelly Driscoll, Esq.
Michael Stephen Komar, Esq.
Menz Bonner Komar & Koenigsberg LLP
Rye Brook, NY
*Counsel for Defendant Safety National Casualty Corp.*

Anthony Douglas Green, Esq.
Winget, Spadafora & Schwartzberg, LLP
New York, NY
*Counsel for Defendant Sedgwick Claims Management Services, Inc.*

Daniel Patrick Quinlan, Esq.
Winget, Spadafora & Schwartzberg, LLP
Stamford, CT
*Counsel for Defendant Sedgwick Claims Management Services, Inc.*

KENNETH M. KARAS, United States District Judge:

      Matthew J. Fecteau ("Plaintiff") brings this Action against Defendant Safety National

Casualty Corporation ("Safety National") and Defendant Sedgwick Claims Management

Services, Inc. ("Sedgwick") (collectively, "Defendants"), seeking damages of various types for

bad faith claims handling and violations of New York General Business Law ("N.Y. GBL")

§ 349, attorney's fees, and costs and prejudgment interest on all damages as permitted by law.

(Am. Compl. 7 (Dkt. No. 18).)[1]

Before the Court are the following Motions:

- Plaintiff's two Motions for Remand, (Dkt. No. 9, Dkt. No. 44);

- A related Motion for Relief under the Servicemembers Civil Relief Act ("SCRA"), which also seeks to remand the case, (Dkt. No. 38), and request for a stay under the same (Dkt. No. 65);

- Plaintiff's Motion to Enforce a Forum Selection Clause, which also seeks to remand the case, (Dkt. No. 30);

- Sedgwick's Motion to Dismiss, (Dkt. No. 54);

- Safety National's Motion to Dismiss, (Dkt. No. 59);

- Motions by Plaintiff to supplement or otherwise clarify the record, including requests that the Court judicially notice various materials and/or grant limited discovery, (Dkt. No. 53, Dkt. No. 58, Dkt. No. 63, Dkt. No. 64, Dkt. No. 71, Dkt. No. 90, Dkt. No. 129); and

- Safety National's Motion for Sanctions, (Dkt. No. 93), along with Plaintiff's related request to strike or otherwise limit the materials the Court may consider on such Motion, (Dkt. No. 107, Dkt. No. 108, Dkt. No. 111).

For the reasons that follow, Plaintiff's motions seeking remand and other relief are denied,

Defendants' Motions to Dismiss are granted, Safety National's Motion for Sanctions is granted

in part and denied in part, some of Plaintiff's motions to supplement the record are granted and

others are denied as explained further in the body of the Opinion, all of Plaintiff's requests for

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page in citations the record. Generally, the Court refers to materials from Plaintiff's Amended Complaint and other documents that include paragraph numbering by reference to the paragraph numbers cited. Here, however, the Court uses the ECF-stamped page numbers in reference to the Amended Complaint as the relevant portion of the Amended Complaint does not include paragraph numbers.

limited discovery are denied, and Plaintiff's requests to strike or otherwise limit the materials the Court may consider on the Motion for Sanctions are denied.

## I.  Background

A.  Factual Background

Unless otherwise stated, the following facts are drawn from the Amended Complaint and the exhibits therein, as well as other relevant materials submitted by Plaintiff that are consistent with those allegations.[2]  The facts alleged therein are assumed true for the purpose of resolving the instant Motions. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).

Plaintiff has alleged, in both this case and a related civil rights action (the "Related Action"), that the City of Mount Vernon ("the City") and its employees engaged in various constitutional violations related to Plaintiff's property that is located within the City.  *See Fecteau v. City of Mount Vernon*, No. 23-CV-9173, 2025 WL 873018, at *2–4 (S.D.N.Y. Mar.

---

[2] Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves," because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002); *accord Doe v. County of Rockland*, No. 21-CV-6751, 2023 WL 6199735, at *1 (S.D.N.Y. Sept. 22, 2023). "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment." *Thomas*, 232 F. Supp. 2d at 275; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (same).

Moreover, the Court's "mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as [the] opposition memorandum," *Williams v. Barometre*, No. 20-CV-7644, 2022 WL 903068, at *2 n.4 (S.D.N.Y. Mar. 28, 2022) (quotation marks and citation omitted), "to the extent that those allegations are consistent" with the Complaint, *Veras v. Jacobson*, No. 18-CV-6724, 2020 WL 5659551, at *1 n.1 (S.D.N.Y. Sept. 23, 2020) (citation omitted); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to pro se opposition memorandum).  Accordingly, and as noted throughout, the Court has considered supplementary materials submitted by the Plaintiff where they are consistent with the allegations in his Complaint.

20, 2025). (*See also* Dkt. No. 1-1 ("Compl.") at 5.)  Plaintiff is currently litigating various constitutional claims against the City and its officials in the Related Action.  *See Fecteau*, 2025 WL 873018, at *1, 7.

In connection with the allegations in the Related Action, Plaintiff has claimed that the City is insured under Safety National Policy No. XPR4068013 (the "Policy"). (Am. Compl. at 4.)  This policy, he says, includes $5 million in Law Enforcement and Public Officials Liability coverage and covers "bodily injury, property damage, personal injury, and wrongful acts performed within the scope of official duties" up to a limit of $5,000,000 per occurrence. (Compl. at 5.)  In the copy of the Policy included in the filings in this Action, Sedgwick is identified as the Claims Administrator for the Policy.  (Dkt. No. 1-3 at 6; *see also* Dkt. No. 18-1 at 6.)[3]

After Plaintiff commenced the Related Action, on September 27, 2024, Safety National, "through Sedgwick," issued a "Notice of Disclaimer of Coverage" to Plaintiff, giving Plaintiff notice that "Safety National has disclaimed coverage" to the Defendants in the Related Action with regard to the events alleged therein.  (Dkt. No. 18 ¶ 9; Dkt. No. 18-2 (copy of the disclaimer letter).)  That notice, which appears on Safety National letterhead and copies as a recipient an individual from Sedgwick, explains various asserted exclusions under the Policy, and warns that

---

[3] Plaintiff has requested that the Court take judicial notice of an alleged disclaimer letter sent to the by Safety National to the City. (*See* Dkt. No. 53; Dkt. No. 53-1.)  Plaintiff's primary objective in introducing this letter appears to be that he views some of its language as inconsistent with language in the alleged disclaimer he received.  (*See* Dkt. No. 53-1 at 2 (a copy of a "Partial/Conditional" disclaimer to the City that includes apparent annotations from Plaintiff).)  As with Plaintiff's other filings, the Court has considered this document to the extent that it is not inconsistent with Plaintiff's Amended Complaint, but notes that this letter has no bearing on its disposition of the Motions to Dismiss.

coverage might be disclaimed to the extent that the Defendants' activities fall within those exceptions.[4]  (*See* Dkt. No. 18-2.)

B.  Procedural Background

On October 18, 2023, Plaintiff filed the Related Action *pro se*.  (*See* Dkt. No. 1 (23-CV-9173 Dkt.).)[5]  As relevant here, on October 31, 2024, without requesting leave of the Court, Plaintiff filed a Motion to Compel Joinder of Third-Party Safety National, the City's insurer.  (*See* Dkt. No. 76 (23-CV-9173 Dkt.); Dkt. No. 77 (23-CV-9173 Dkt.); Dkt. No. 78 (23-CV-9173 Dkt.).)  In short, Plaintiff sought to challenge Safety National's coverage position and response to his claims in the Related Action, claiming that Safety National was misapplying policy exclusions and had an obligation to extend coverage for his claim.  *See Fecteau*, 2025 WL

---

[4] Sedgwick attaches an affidavit that represents that Sedgwick is a "third-party claims administrator," that Safety National "is not a Sedgwick client and Sedgwick does not play any part in issuing coverage positions on behalf of Safety National or otherwise determining availability of coverage," and that Sedgwick "is not an insurance company," but rather provides "administrative services in handling claims and legal proceedings."  (Dkt. No. 54-2 at 2–4.)  The affiant, a claims adjuster for Sedgwick, avers that neither she nor anyone else at Sedgwick played any part in drafting the letter or undertaking its coverage analysis.  (*Id.* at 3–4.)

The Court does not need to rely on any of these materials to dispose of the Motions before it, and therefore it does not depend on these evidentiary submissions. *See Commer v. McEntee*, 121 F. Supp. 2d 388, 392 n.4 (S.D.N.Y. 2000) (concluding that, even where there exist many factual disputes between the parties, an evidentiary hearing is not required where "resolution of those disputes . . . will not affect [the plaintiff's] entitlement to relief").  Accordingly, the Court denies Plaintiff's request for further limited disclosures and factual clarification from Sedgwick.  (*See* Dkt. No. 58.)  The so-called factual issues described in that letter are immaterial to the Court's decision to dismiss this case.

Similarly, Plaintiff requests that he be permitted to supplement the record with a contract between Sedgwick and Mount Vernon, (Dkt. No. 63), a request that Sedgwick does not oppose, (*see generally* Dkt. No. 80).  Because this contract is consistent with Plaintiff's complaint and Sedgwick does not oppose the request, the Court has considered it in connection with its decision on the Motions to Dismiss.  However, this document has virtually no bearing on the Court's decision.  Plaintiff's claims fail for reasons independent of the text of that agreement, as described further below.

[5] The Court indicates references to docket materials in the Related Action by including the case number for that Action in parentheses at the end of the citation.

873018, at *15.  On December 6, 2024, Safety National opposed the Motion for Joinder.  (*See* Dkt. No. 93 (23-CV-9173 Dkt.).)

On March 20, 2025, in an Opinion disposing of multiple pending motions in the Related Action, the Court concluded that Safety National could not be joined in the Related Action. *Fecteau*, 2025 WL 873018, at *15.  The Court concluded that Plaintiff lacked standing to assert the claims he raised in that case against the insurer, given that New York Law would require Plaintiff to first obtain a judgment against the insurer, serve the insurance company with a copy of the judgment, and await payment for thirty days.  *Id.* at *16.  In a footnote, the Court warned Plaintiff that his conduct towards Safety National in the litigation was "borderline harassment," and explained that if he were to "persist[] in contacting Safety National or attempting to involve it in this Action any further, without valid reason, the Court [would] consider sanctions" against him.  *Id.* at *16 n.21.

Approximately one month later, on April 21, 2025, Plaintiff filed this Action in the Supreme Court of the State of New York, County of Westchester. (Dkt. No. 1-1 at 3).  In his Complaint, he again challenged Safety National's September 27, 2024 disclaimers, (*id.* at 7), and asserted three causes of action against Safety National, seeking declaratory relief as to its purported coverage obligations, declaratory relief as to Safety National's purported invalid disclaimer, and damages for bad faith claims handling, (*id.* at 11–14).  Plaintiff also named Tokio Marine Holdings, Inc., as a Defendant.  (*Id.* at 4.)

On May 7, 2025, Safety National removed the Action to federal court based on diversity jurisdiction, and the Action was deemed related to the Related Action.  (Dkt. No. 1; *see also* Dkt.

6

(notice of case being accepted as related to the Related Action dated May 15, 2025).)[6]  It appears that, shortly after Plaintiff's Complaint was filed, he filed an Amended Complaint (the "State Amended Complaint") in the state court proceeding.  (Dkt. No. 13 at 2; *see also* Dkt. No. 17-13 (amended complaint seemingly filed on May 9, 2025).)  This document named Sedgwick as a Defendant and no longer named Tokio Marine as a Defendant.  (Dkt. No. 17-13, at 4–5.)  Although, Plaintiff says, he "intended for the [State] Amended Complaint to be filed and in effect prior to opposing counsel's Notice of Removal" the document was filed "shortly afterward."  (Dkt. No. 13 at 2.)  Plaintiff served the State Amended Complaint on Safety National.  (Dkt. No. 16 at 7–8; *see also* Dkt. No. 17-13; Dkt. No. 17-4; Dkt. No. 17-15.)  In a letter dated May 16, 2025, Plaintiff requested that the Court "either accept [his] Amended Complaint in place of the original complaint or, in the alternative, grant [him] leave to file the Amended Complaint."  (Dkt. No. 13 at 2.)  By memo endorsement on May 22, 2025, the Court granted Plaintiff leave to file "an amended complaint."  (Dkt. No. 15 at 1.)

On May 30, 2025, Plaintiff filed the Amended Complaint in this Action.  (Dkt. No. 18). This Amended Complaint, it seems, was not the same as the amended complaint that was filed in state court.  (*Compare* Dkt. No. 17-13 (copy of the state amended complaint filed by Safety National) *with* Dkt. No. 18 (Amended Complaint).)  However, like the first amended complaint,

---

[6] Although Safety National initially took the position that it had not properly been served with process prior to removal, (*see* Dkt. No. 1 at 1–2), it appears to have abandoned this position as it has never challenged the service of process in any Motion before this Court, (*see generally* Dkt.).  Accordingly, the Court treats any such objection as waived for the purposes of deciding the Motions addressed here.  *Dubois v. Maritimo Offshore Pty Ltd.*, 454 F. Supp. 3d 173, 179 (D. Conn. 2020) ("Ordinarily, a party who files a motion to dismiss under any provision of Rule 12 who neglects to specifically move to object to the validity of service of process under Rule 12(b)(5) waives any objection to service of process.").

the new Amended Complaint removed Defendant Tokio Marine Holdings and added as a Defendant Sedgwick Claims Management Services.[7]  (*See* Dkt. No. 18 at 3.)  Defendant's new Amended Complaint also omitted his two causes of action seeking declaratory relief; it included the claim alleging bad faith claims handling and added a claim for deceptive practices under GBL § 349.  (*Id.* at 6–7.)

From that point forward, Plaintiff filed a flurry of motions of various types.  To start, he filed a "Supplemental Motion to Remand" the case based on his Amended Complaint.  (*See* Dkt. No. 23; Dkt. No. 24; Dkt. No. 25.)  Next, Plaintiff moved the court to enforce a forum selection clause that, he said, mandated that the case proceed in state court.  (Dkt. No. 30; Dkt. No. 31; Dkt. No. 32.)  Then, Plaintiff filed a Motion for Remand that invoked the Servicemembers Civil Relief Act ("SCRA"), and two related Motions to Stay the Action under the same.  (Dkt. No. 44; Dkt. No. 45; Dkt. No. 46; Dkt. No. 47; Dkt. No. 65; Dkt. No. 66; Dkt. No. 67.)  All told, Plaintiff has made at least five separate bids to remand this Action to state court.[8]

In parallel, Defendants each moved to dismiss the Amended Complaint.  (Dkt. No. 54 (Sedgwick's Motion to Dismiss); Dkt. No. 59 (Safety National's Motion to Dismiss).)  In due course, Plaintiff filed his Memoranda of Law in Opposition to each motion, (Dkt. No. 72 (Opposition to Sedgwick's Motion to Dismiss); Dkt. No. 78 (Opposition to Safety National's Motion to Dismiss)), and Defendants replied, (Dkt. No. 85 (Sedgwick's Reply Memorandum);

---

[7] As Sedgwick notes in its Memorandum of Law in Support of its Motion to Dismiss, certain procedural oddities resulted from the fact that it was named in the post-removal Amended Complaint.  (*See* Dkt. No. 54 at 11–12.)  In the name of judicial economy, and because the Court permitted Plaintiff to file his new Amended Complaint naming Sedgwick as a Defendant in the federal proceedings, the Court addresses the claims against Sedgwick in this Opinion.

[8] Plaintiff also filed a Motion for Relief under the SCRA without any accompanying memorandum of law.  (*See* Dkt. No. 38.)  It is unclear whether this was meant to be part of his later filings, (*see* Dkt. No. 46), or a separate request for relief under the SCRA.

Dkt. No. 86 (Safety National's Reply Memorandum)).  In response, Plaintiff filed materials to "clarify the record and oppose [D]efendants['] mischaracterizations."  (Dkt. No. 90; Dkt. No. 91.)

Beginning with Plaintiff's first Motion for Remand, Safety National began to send Rule 11 notice letters to Plaintiff, citing the Court's earlier Opinion in the Related Action.  (*See* Dkt. No. 95 ¶ 26 (describing first Rule 11 notice letter dated May 14, 2025).)  Safety National continued to send these notices to Plaintiff as he filed his subsequent remand Motions, citing case law suggesting that Plaintiff's legal arguments would not be successful.  (*Id.* ¶¶ 40 (describing second Rule 11 notice letter dated June 6, 2025), 49 (describing letter dated June 17, 2025, explaining that Defendant intended to send another Rule 11 notice letter), 53 (describing third Rule 11 notice letter dated June 23, 2025).)  These interactions occurred against the backdrop of an already troubled relationship: in the Related Action, Plaintiff had attempted to join Safety National and, after that request was denied in an Opinion from the Court, tried to serve a non-party subpoena on the Company.  (*Id.* ¶¶ 67–68, 71–73.)  *See also Fecteau*, 2025 WL 873018, at *15.  In that action, the Court warned Plaintiff that he had engaged in unacceptable threatening behavior towards Safety National, and informed him that he could be subject to sanctions if he did not cease behaving vexatiously towards the company and its employees.  *Fecteau*, 2025 WL 873018, at *5 n.12, 16 n.21, 22 n.23.

In addition to Plaintiff's repeated clashes with the company before this Court, Safety National's counsel avers that Plaintiff has filed 29 requests with state and local agencies across the country attempting to obtain records related to Safety National and Sedgwick, filed a complaint with the Missouri Attorney General's Office about Safety National's participation in a charitable program, contacted Japanese authorities related to former defendant Tokio Marine

Holdings, and filed public records requests with public entity insureds about Safety National's coverage and claims history.  (Dkt. No. 95 ¶¶ 74–75.)

On September 29, 2025, Safety National moved for sanctions against Plaintiff based both on the substance of filings he made in this Action, as well as his litigation tactics.  (Dkt. No. 93; *see also* Dkt. No. 94 (Safety National's Mem. of Law in Supp. of Mot. for Sanctions).)  While briefing on the Motion for Sanctions was ongoing, Plaintiff attempted to rejoin Tokio Marine Holdings by again amending his complaint.  (*See* Dkt. No. 98.)  The Court denied this request, explaining that the Court would not consider this request "until after [it] decides the pending Motions to Dismiss and for Sanctions."  (Dkt. No. 104.)[9]

Plaintiff also requested that the Court strike or seal exhibits to Safety National's counsel's Declaration in Support of the Sanctions Motion, a request that the Court denied.  (Dkt. No. 105 at 3.)  In the face of this denial, Plaintiff again cross-moved to strike Safety National's sanctions motion and requested other relief.  (Dkt. No. 107 at 1–2; Dkt. No. 108 at 2.)  Later, Plaintiff also attempted to move for a declaratory judgment, (Dkt. No. 114), which the Court denied because Plaintiff "did not include the underlying cause of action for which he seeks declaratory relief" and because he likely lacked standing to seek the requested relief, (Dkt. No. 118).

In the meantime, briefing on the sanctions motion concluded.  (*See* Dkt. No. 110; Dkt. No. 115.)

---

[9] Given that the Court has already denied this Motion, the Court further denies Plaintiff's request for limited discovery into the relationship between Safety National and Tokio Marine. (*See* Dkt. No. 110 at 12–13.)

<u>II.  Discussion</u>

The Court begins its analysis by considering Plaintiff's various motions seeking remand of this Action to state court.

A.  <u>Plaintiff's Motions to Remand</u>

1.  <u>Standard of Review</u>

"'Federal courts are courts of limited jurisdiction' that 'possess only that power authorized by Constitution and statute.'"  *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Among the limited categories of disputes over which a federal court may exercise jurisdiction are those "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."  28 U.S.C. § 1332(a)(1).  Where a case meets these requirements, but was nevertheless initiated in state court, it "may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending," at least if Congress has not provided otherwise, 28 U.S.C. § 1441(a), and provided that the defendant in the diversity action is not a citizen of the state where the action was brought, *id.* § 1441(b)(2).  "[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."  *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013); *see also Commonwealth Advisors Inc. v. Wells Fargo Bank, Nat'l Ass'n*, No. 15-CV-7834, 2016 WL 3542462, at *2 (S.D.N.Y. June 23, 2016) (same).

As the Second Circuit recently explained, "[a]fter a party removes a case to federal court, the opposing party may seek to remand the case back to state court."  *City of New York v. Exxon*

*Mobil Corp.*, 154 F.4th 36, 40 (2d Cir. 2025).  The removing defendant bears the burden of establishing that such removal is proper.  *Id.* (citing *Connecticut v. Exxon Mobil Corp.*, 83 F.4th 122, 132 (2d Cir. 2023).

    2.  <u>Analysis</u>

Within Plaintiff's various filings, the Court has been able to discern five main arguments that removal of this Action from state court was improper, or that remand is necessary.  These are: (1) the assertion that this Court lacks jurisdiction, either on the basis that a Defendant's citizenship destroys complete diversity between the parties or on the grounds that the case presents no federal question, (*e.g.* Dkt. No. 25 at 2–3); (2) an asserted absence of unanimous consent to removal, as required by § 1446(b)(2)(a), (Dkt. No. 25 at 3); (3) the presence of a forum selection clause in Safety National's policy which, Plaintiff submits, requires that this case be litigated in state court, (*id.*); (4) an asserted procedural defect under New York law stemming from the fact that no Request for Judicial Intervention had been filed in state court prior to removal, (Dkt. No. 44 at 2); and (5) the purported effects of the SCRA on removal and/or proceedings in this Court or New York State court, (*e.g. id.*).[10]  For the reasons explained below, each of these arguments is unavailing.

    a.  <u>Diversity Jurisdiction</u>

Safety National removed this Action on the basis of diversity jurisdiction.  (Dkt. No. 1 at 1.)  *See also* 28 U.S.C. § 1332(a)(1).  The propriety of removal is determined by the pleadings at

---

[10]  Plaintiff further argues that filings involving the remand of his initial, pre-amendment Complaint, became "legally irrelevant" upon amendment.  (Dkt. 25 at 3.)  In the name of fairness to the *pro se* Plaintiff, the Court has considered the arguments raised in Plaintiff's initial motion for remand, and Safety National's prior opposition, to the extent that they are not mooted by the filing of Plaintiff's Amended Complaint, and concludes that they fail for the same reasons explained herein.

the time of removal. *See, e.g.*, *Jean-Louis v. Carrington Mortg. Servs., LLC*, 849 F. App'x 296, 298 (2d Cir. 2021) (summary order) ("[T]he propriety of removal . . . is determined by the pleadings at the time of removal." (internal quotation marks, footnotes, and citations omitted)); *Vera v. Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003) ("[W]e generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed."). The Court concludes that this removal was and remains proper because there was complete diversity of citizenship between the Parties to this Action (and, indeed, there is still complete diversity between the Parties).

At the time of removal, the Complaint named two defendants: Safety National and Tokio Marine Holdings. As alleged in the Complaint, Plaintiff is a New York Citizen with residency in Mount Vernon, New York. (Compl. at 2.) Defendant Safety National is incorporated under Missouri law, with its principal place of business in Missouri. (*Id.* at 3; *see also* Dkt. 43-11, at 2 (DFS portal listing a Missouri address for the Company).) [11] Former Defendant Tokio Marine is incorporated under the laws of Japan with its principal place of business in Tokyo, Japan. (*See, e.g.*, Compl. at 4; Dkt. No. 16 at 5; Dkt. No. 17-12 at 2; Dkt. No. 35 at 2.) Accordingly, at the

---

[11] Confronted with a jurisdictional inquiry, the Court may, in addition to the Amended Complaint, "consider the parties' affidavits and attached exhibits in deciding the motion to remand." *M.S.S. Constr. Corp. v. Century Sur. Co.*, No. 15-CV-2801, 2015 WL 6516861, at *1 n.1 (S.D.N.Y. Oct. 28, 2015) (citing *Gov't Employees Ins. Co. v. Saco*, No. 12-CV-5633, 2015 WL 4656512, at *3 (E.D.N.Y. Aug. 5, 2015) and *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461–62 (2d Cir. 1998)); *see similarly Saba Cap. Master Fund, Ltd. v. BlackRock Mun. Income Fund, Inc.*, 710 F. Supp. 3d 213, 224 n.11 (S.D.N.Y. 2024) ("For such jurisdictional questions, the Court may properly consider any declarations submitted by the parties"), *aff'd sub nom. Saba Cap. Master Fund, LTD. v. Blackrock ESG Cap. Allocation Tr.*, No. 23-8104, 2024 WL 3174971 (2d Cir. June 26, 2024) (summary order), *cert. granted on other grounds sub nom. FS Credit Opportunities Corp. v. Saba Cap. Master Fund, Ltd.*, 145 S. Ct. 2842 (2025). Accordingly, the Court can and does consider materials submitted by Safety National and Sedgwick that establish their citizenship.

time of removal, complete diversity existed between the parties. Plaintiff has not challenged that the amount in controversy requirement is satisfied, nor could he. At the time of removal, there was at least $1,200,000 in controversy between the parties—$950,000 in compensatory damages and $250,000 in punitive damages. (Dkt. No. 1-1 at 11–14 (seeking a declaration that would have the effect of requiring the insurers to cover damages in the Related Action, and further requesting damages based on the asserted bad faith claims handling claim)); *see* Dkt. No. 56 at ¶ 104 (23-CV-9173 Dkt.) (seeking $1,200,000 in damages in the Related Action).)

Plaintiff further argues that this Court lacks jurisdiction—and therefore must remand the case to state court—based on the inclusion of Sedgwick in the Amended Complaint. (Dkt. No. 25 at 2–3.) "[I]n removed cases . . . amending a complaint to join a non-diverse party destroys diversity jurisdiction"; even "if such a joinder occurs after removal, the federal court must remand the case to the state court it began in." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 38 (2025). Accordingly, the Court considers whether the Amended Complaint eliminated diversity jurisdiction in this case.

The Amended Complaint filed in this Court states that Sedgwick is a "claims administrator incorporated in Ohio." (Dkt. No. 18 ¶ 4.) Plaintiff claims that Sedgwick and Safety National are authorized to do business in New York State. (*Id.*; *see also* Dkt. No. 24 at 2 ("Sedgwick is a registered New York business with a presence and active service location in the state.").) In contrast, Safety National submits that Sedgwick is incorporated under the laws of the State of Illinois, and has its principal place of business in Memphis, Tennessee. (Dkt. No. 43 ¶ 28; *see also* Dkt. No. 43-22; Dkt. No. 43-23; Dkt. No. 43-24.) It provides information on the corporation's registration from official state websites, each of which confirms this representation. (Dkt. No. 43-22 at 2–3 (New York Department of State Portal listing Sedgwick

14

as a foreign corporation, in the jurisdiction of Illinois, with its "Principal Executive Office" in Memphis, Tennessee), Dkt. No. 43-23 at 2–3 (Illinois Department of State Portal listing Sedgwick as a domestic corporation), Dkt. No. 43-24 at 2 (Tennessee Department of State Portal listing Sedgwick as a foreign corporation, with its principal office in Tennessee, and its state of formation as Illinois).)[12]

These materials are sufficient for the Court to conclude that the parties to this lawsuit are diverse "For the purposes of diversity jurisdiction, 'a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business.'" *Novilla v. Geo Freight, Inc.*, No. 24-CV-2142, 2024 WL 2137965, at *1 (S.D.N.Y. May 13, 2024) (quoting 28 U.S.C. § 1332(c)(1)). Accordingly, and for the purposes of diversity jurisdiction, Plaintiff is a citizen of New York; Sedgwick is a citizen of Illinois and Tennessee; and Safety National is a citizen of Missouri. There is therefore complete diversity between the Parties. To support the existence of diversity jurisdiction, there must also be over $75,000 in controversy between the parties. 28 U.S.C. § 1332(a); *see also Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). Given that Plaintiff seeks at least $950,000 in compensatory damages in the Related Action and requests here that the Defendants award him compensatory damages arising from their refusal to acknowledge coverage (among other relief), this requirement is also satisfied. (Dkt. No. 8 at 7; *see also* Dkt.

---

[12] Even in the absence of Safety National's submissions, these materials would properly be subject to judicial notice, and properly before the Court at this juncture. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166–67 (S.D.N.Y. 2015) ("As to the seven documents retrieved from official government websites . . . it is clearly proper to take judicial notice. Courts routinely take judicial notice of such governmental records.").

No. 56 ¶ 104 (23-CV-9173 Dkt.) (requesting "compensatory damages of not less than nine-hundred and fifty thousand dollars").)

Plaintiff's declaration and allegations about Defendants' registrations to do business in the state—as well as their activities in the state—do not affect the Court's citizenship analysis.  It is well established that "[t]he fact that a foreign corporation is authorized or licensed to do business in a state does not . . . make it a citizen of that state."  *Arab Int'l Bank & Tr. Co. v. Nat'l Westminster Bank Ltd.*, 463 F. Supp. 1145, 1148 (S.D.N.Y. 1979); *see also Espinoza v. Warner Music Grp. Corp.*, No. 23-CV-7944, 2025 WL 1736589, at *2 (S.D.N.Y. June 23, 2025) (reasoning that allegations that a defendant was "registered to do business in New York" do not suffice to allow the court to determine whether diversity exists between the parties).  Rather, citizenship is limited to the place of incorporation and principal place of business.  *See* 28 U.S.C. § 1332(c)(1).

> b. Unanimous Consent

"[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action" to satisfy the requirements of Section 1446(b)(2)(A).  *Cole v. City of New York*, No. 19-CV-8376, 2020 WL 3618422, at *2 (S.D.N.Y. July 2, 2020) (quoting 28 U.S.C. § 1446(b)(2)(A)); *accord Alicia S. Francis Tr. v. Bridgecrest Acceptance Corp.*, No. 25-CV-6968, 2025 WL 3000260, at *3 (S.D.N.Y. Oct. 27, 2025).  "This rule is known as the rule of unanimity, and it has three recognized exceptions:"

> [A] removing defendant [may] forego securing the consent of any co-defendant who: (1) has not been served with service of process at the time the removal petition is filed; (2) is merely a nominal or formal party; or (3) is not subject to the removed claim, which is a separate and independent claim from those asserted against the non-consenting defendant as defined by 28 U.S.C. § 1441(c).

*Id.* (quoting *Metro. Transp. Auth. v. U.S. Fid. & Guar. Co.*, No. 14-CV-9059, 2015 WL 1730067, at *4 (S.D.N.Y. Apr. 14, 2015)) (quotation marks omitted). "The sufficiency of service of process prior to removal is determined under the law of the state from whence the case was removed." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 384 (S.D.N.Y. 2006) (citation omitted); *accord Alicia S. Francis Tr.*, 2025 WL 3000260, at *3.

Plaintiff asserts that removal in this case was improper because Tokio Marine Holdings did not provide its consent. (Dkt. No. 25 at 3.) Plaintiff's position runs headlong into the first exception described above.[13] In support of his initial Motion to Remand, Plaintiff declared under penalty of perjury that "[s]ervice ha[d] not been properly effected on any Defendant in compliance with CPLR § 311." (Dkt. No. 11 ¶ 3.) Where a defendant has not been served, its consent is not required in order to remove the case. *See, e.g., Kane v. St. Raymond's Roman Cath. Church*, No. 14-CV-7028, 2015 WL 4270757, at *4 (S.D.N.Y. July 13, 2015) ("[A]t the time that [the defendant] filed for removal, it was the only defendant who had been served . . . . It was therefore the only defendant whose consent was required to file the notice of removal."); *Paige v. City of New York*, No. 21-CV-11104, 2023 WL 3122989, at *2 (S.D.N.Y. Apr. 27, 2023) ("In any event, the rule of unanimity does not apply here because [the defendant] was not served properly."). The asserted absence of unanimous consent, therefore, does not require remand to state court.

---

[13] It also ignores the text of 28 U.S.C. § 1446, from which the exception derives. The statutory text provides that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." *See* 28 U.S.C. § 1446.

c. Forum Selection Clause

Next, Plaintiff takes the position that a forum selection clause in the Safety National Policy issued to Mount Vernon requires that this dispute be litigated in New York State court. (Dkt. No. 25 at 3.)  In relevant part, that clause provides, "Unless both parties agree otherwise, arbitration or litigation in a court of competent jurisdiction will take place in the state of New York. . . . This policy shall be governed by and construed in accordance with the laws of the state of New York." (Dkt. No. 12-1 at 12.)  Plaintiff represents that he has formally demanded an assignment of insurance rights from the City to assert the claims against the named defendants, and that he may enforce the forum selection clause as a non-signatory.  (Dkt. No. 31 at 2.)

As Defendants correctly point out, Plaintiff is not a party to the contract or in privity with a party.  (*See* Dkt. No. 48 at 13; Dkt. No. 55 at 21–22.)  Accordingly, there are only "three sets of circumstances" under which Plaintiff could invoke the forum selection clause: (1) if he were a "third-party beneficiary" of the Policy; (2) if he were a party to a "global transaction" who was not a "signator[y] to a specific agreement within that transaction"; or (3) if he were "'closely related' to one of the signatories." *Freeford Ltd. v. Pendleton*, 857 N.Y.S.2d 62, 67 (App. Div. 2008) (citations omitted); *see also Bernstein v. Wysoki*, 907 N.Y.S.2d 49, 56 (App. Div. 2010) (same); *May v. U.S. HIFU, LLC*, 951 N.Y.S.2d 163, 166 (App. Div. 2012) (same).  Plaintiff attempts to invoke the "closely related" exception.  (Dkt. No. 31 at 2 (arguing that Plaintiff may "enforce the forum selection clause [as an entity] 'closely related' to the contracting parties or the dispute").)  This exception applies where the "nonparty and the signatory . . . [are] sufficiently close . . . that enforcement of the clause is foreseeable by virtue of the relationship between them." *Freeford*, 857 N.Y.S.2d at 67.

18

Plaintiff points to no case applying the "closely related" exception in similar circumstances, and the Court can find none.  Rather, the weight of authority suggests that Plaintiff could not invoke the exception absent circumstances that more closely tied him to the agreement or dispute, such as individual involvement in the transaction or language that could clearly be construed to implicate Plaintiff specifically.  *See Tate & Lyle Ingredients Americas, Inc. v. Whitefox Techs. USA, Inc.*, 949 N.Y.S.2d 375, 378 (App. Div. 2012) (concluding parent company could have forum selection clause signed by subsidiary enforced against it where the entities "consulted with each other," "were intimately involved in the decision making process" that led to the agreement's singing, and parent had to give "approval" to subsidiary to enter into the agreement); *Hluch v. Ski Windham Operating Corp.*, 925 N.Y.S.2d 200, 203 (App. Div. 2011) (holding that defendant ski resort operating company could not invoke forum selection clause in contract between skier-plaintiff and United States Ski and Snowboard Association where the clause encompassed the Association's "ski and snowboard facility operators" and nowhere in the document was the defendant "named as a USSA ski and snowboard facility operator").[14]  The Court therefore concludes that this exception does not apply to Plaintiff, at least on the facts alleged here, and that he therefore cannot invoke the forum selection clause.

Assuming in the alternative that Plaintiff could enforce the clause, there is no indication that remand to state court is appropriate based on the terms of the Policy.  It is beyond

---

[14] The cases Plaintiff cites suggest the same.  *See Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (summarizing cases where non-signatories were required to arbitrate based on "close relationship" between the parties "as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract" and the claims being "founded in and intertwined with the underlying contract" (quotation marks and citations omitted)); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209–10 (7th Cir. 1993) (holding clause could be invoked against President and Chairman of certain corporations, who also owned 99% interest in corporation at issue, and to whom assurances at the heart of the dispute were made).

19

peradventure that the "state of New York" has both state and federal courts. Where litigation in a federal forum would satisfy the terms of a forum selection clause, that clause does not justify remand to state court. *See Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009) (holding that, where forum selection clause that provided that the "venue and place of trial of any dispute . . . shall be in Nassau County, New York," "had there been a federal court located in Nassau County at the time of this litigation, remand would have been improper"); *Gonzales v. Agway Energy Servs., LLC*, No. 18-CV-235, 2019 WL 910669, at *2 (N.D.N.Y. Feb. 25, 2019) ("The forum selection clause . . . provides . . . [that] [']Venue for any lawsuit . . . shall lie exclusively in the State of New York. This Agreement . . . shall be governed by the laws of the State of New York . . . .['] Because this language does not specify state or federal court, it would almost certainly be construed to permit suit in either state or federal court."); *Eklecco Newco, LLC v. Gloria Jean's Gourmet Coffees Corp.*, No. 08-CV-861, 2009 WL 2185405, at *3 (N.D.N.Y. July 17, 2009) ("Here, as in *Yakin*, the forum selection clause is silent as to the parties' intent regarding federal or state jurisdiction, and merely contains the obligatory venue language that 'any dispute . . . shall be brought in either Syracuse, New York, or in the jurisdiction where the Premises is located.' However, unlike the facts underlying the Second Circuit's decision in *Yakin*, here there is a federal courthouse located in Syracuse, New York. As such, remand here would be improper."); *City of N.Y. v. Pullman Inc.*, 477 F. Supp. 438, 442–43 (S.D.N.Y. 1979) (concluding that provision permitting controversies "to the New York courts and the New York courts only" did not preclude litigation in a federal court in New York, and therefore denying remand).[15] Thus the language of the forum selection clause offers no support for remand.

---

[15] Plaintiff's argument that the clause constitutes waiver of Safety National's right to remove, (*see* Dkt. No. 31 at 4), is unavailing for the same reason.

d. Asserted Procedural Defect under New York Law

In a separate Motion, Plaintiff requests leave to supplement his Motions to Remand, and asks the Court to find that "the removal was procedurally defective under New York law because no Request for Judicial Intervention ('RJI') had been filed at the time of removal," which, he says, "render[s] the matter unripe for removal" according to 28 U.S.C. § 1441. (Dkt. No. 44 at 2.)[16] He claims that in the absence of an RJI, he was "procedurally barred from initiating any motion practice in state court, including efforts to invoke or enforce his rights under the SCRA," including tolling. (Dkt. No. 46 at 4.) At the same time, Plaintiff claims, the Act barred him from filing the RJI itself, requesting a stay, or challenging removal. (*Id.*)

Nothing in the text of 28 U.S.C. § 1441 or 28 U.S.C. § 1446 suggests that either party was required to file a Request for Judicial Intervention prior to removal. Moreover, even assuming that Safety National or Plaintiff failed to comply with a state procedural rule, such failure does not provide a justification for remand. Reliance on those rules is "misplaced

---

[16] The Court notes that this argument was not timely raised, as Plaintiff did not assert it until more than 30 days after filing the notice of removal under section 1446(a). *See* 28 U.S.C. § 1447(c). (*See* Dkt. No. 44 (filed on June 17, 2025, while case was removed on May 7, 2025).) In the name of fairness to the *pro* se Plaintiff, however, the Court has exercised its discretion to consider this and other remand-related arguments that were not timely raised. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03-MDL-1529, 2005 WL 1404796, at *1 (S.D.N.Y. June 14, 2005) ("[T]he Court, in the absence of Second Circuit authority (which has not been brought to its attention) is persuaded . . . that reasons for remand of a removed case other than defects in removal procedure may be raised after the 30 days have elapsed." (citing *Foster v. Chesapeake Ins. Co., Ltd.*, 933 F.2d 1207, 1212–13 (3d Cir. 1991)); *see also Engel v. 34 E. Putnam Ave. Corp.*, 552 F. Supp. 2d 291, 294 (D. Conn. 2008) ("Thus, although Engel's remand motion was untimely, the court may consider it."); *Phoenix Glob. Ventures, LLC v. Phoenix Hotel Assocs., Ltd.*, 422 F.3d 72, 75 (2d Cir. 2005) ("Under 28 U.S.C. § 1447(c), to avoid waiver of any procedural defects in the notice of removal, a motion for remand must be filed within thirty days of the filing of the notice of removal. This deadline is plainly mandatory. However, we have never held it to be jurisdictional, nor is there any statutory language that purports to limit the court's power to consider an overdue motion." (citations omitted)).

21

because federal procedural rules govern an action after removal." *Nasso v. Seagal*, 263 F. Supp. 2d 596, 608 (E.D.N.Y. 2003); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 437 (1974) ("[O]nce a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal."). As to Plaintiff's contention that the SCRA somehow barred his filing additional materials, the Court sees no basis in the Act to reach that conclusion, and Plaintiff's own frequent filings in this case undercut his own credibility for his assertion that he was prevented by that Act from continuing to litigate.

e. Relief Under the Servicemembers Civil Relief Act

Plaintiff declares under penalty of perjury that he is a "Lieutenant Colonel in the United States Army and ha[s] been on continuous Title 10 active-duty military orders since January 31st, 2025." (Dkt. No. 39 ¶ 2.) He avers that he was on active duty when the Court's Opinion was issued in the Related Action, and reasons that, in light of his continued active-duty status, "all actions are tolled" in both this case and the Related Action. (*Id.* ¶ 4.) He therefore requests "tolling of any applicable statutes of limitations or appellate deadlines impacted by [his] service." (*Id.* ¶ 6.) In a separate motion, he requests remand "on the grounds that the removal was improperly effectuated while Plaintiff was serving on continuous . . . active-duty orders" and invoking the Servicemembers Civil Relief Act. (Dkt. No. 44 at 2.)[17] Plaintiff appears to believe both that the Servicemembers Civil Relief Act provides for an automatic stay of all litigation involving active duty servicemembers, (Dkt. No. 46 at 6), and that the provision of the Act

---

[17] This argument, too, was not timely raised. Plaintiff did not assert that the SCRA required remand until more than 30 days had elapsed after filing the notice of removal under section 1446(a). *See* 28 U.S.C. § 1447(c). (*See* Dkt. No. 38; Dkt. No. 44.) Nevertheless, for the same reasons explained in footnote 16, *supra*, the Court has addressed this argument.

tolling statutes of limitations would affect the deadlines in an already-commenced action, (Dkt. No. 39 at 2).  Plaintiff is mistaken on both counts.

i. The Stay Provision

The Act's stay provision, 50 U.S.C. § 3932, states that a stay can be granted where a servicemember provides:

> (A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.

> (B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.

*Id.*[18]  As should be obvious from this language, a stay under the Servicemembers Civil Relief Act is not automatic but must be granted by the Court after certain procedural requirements are satisfied.  *See id.*

In his initial filing, Plaintiff did not make the requisite submissions.  Eventually, in connection with his Motion for a Stay, (*see* Dkt. No. 65; Dkt. No. 66), he filed a declaration that conclusorily asserted he was entitled to a stay, primarily on the basis that his "inability to completely participate [would be] particularly prejudicial in light of the Defendants' established history of filing appeals and other motions ad nauseam," along with a handful of other underexplained justifications.  (Dkt. No. 67 ¶ 4.)[19]  Plaintiff also attached active-duty orders that

---

[18] This stay provision applies where the servicemember has notice of the action.  *See* 50 U.S.C. § 3932.  It is undisputed that Plaintiff, as the individual who initiated this Action, had notice.

[19] (*See* Dkt. No. 67 ¶¶ 4–5 ("Forcing me to litigate under these circumstances would make an effective response nearly impossible and would unfairly jeopardize my ability to obtain a just resolution, especially if faced with an adverse ruling that I cannot properly contest. . . . [D]espite the strength of my case, the significant challenges and logistical burdens

23

showed that he would be on duty until September 30, 2025, along with a statement from his commanding officer.  (*See generally* Dkt. No. 67-1; Dkt. No. 67-2.)   The statement from his commanding officer was likewise conclusory, and did not explain how Plaintiff's active-duty status would prevent him from continuing to pursue his claims.  (*See* Dkt. No. 67-2 at 2.)[20]

The Court concludes that it would be inappropriate to grant the requested stay.  Plaintiff has not explained adequately why he would be unable to participate fully in the litigation.  *See, e.g.*, *Branch v. Stukes*, No. 01-CV-520, 2001 WL 1550903, at *1 (S.D.N.Y. Dec. 5, 2001) (denying a stay based on an application that merely "recount[ed] that [the defendant] is currently in military service and is stationed overseas"); *Hackman v. Postel*, 675 F. Supp. 1132, 1134 (N.D. Ill. 1988) (ruling that "mere contentions of unavailability, without affirmative representations that leave to attend trial was sought by the serviceman and refused, are insufficient to warrant" a stay).  Even if Plaintiff had offered a more full-throated explanation, the Court would be particularly reluctant to conclude that Plaintiff's participation would be "materially affect[ed]" by his military service, given that he has assertedly been serving during the pendency of this Action and nevertheless has managed to make voluminous, frequent filings in this Action and the Related Action.  *See Stoglin v. Su*, No. 22-CV-917, 2024 WL 5689696, at *5 (D. Minn. Oct. 30, 2024) (reasoning in the alternative that a stay was not appropriate, and noting that servicemember's sending his reply brief "during his deployment . . . undercuts an

---

imposed by my military obligations—compounded by the Defendants' litigation tactics—remain an obstacle to my full and meaningful participation at this time.").)

[20] (*See* Dkt. No. 67 Ex. B at 2 ("Lieutenant Colonel Fecteau is currently serving on active-duty orders with the United States military through September 30, 2025.  As this date is soon approaching, he anticipates being fully able to address this matter . . . . Until that time, the demands of his military duties materially affect his ability to appear and prevent him from meaningfully participating in this litigation.  His availability is dictated by operational requirements, which are unpredictable . . . .").)

argument that he was unavailable"); *Burke v. Kessler*, No. 21-CV-131, 2024 WL 4535612, at *1 (N.D. Okla. Oct. 21, 2024) (denying stay based, in part, on the servicemember's failure to explain "the manner in which [the servicemember's] current military duty requirements materially affect[] his ability to appear" and did not "address why he could not communicate with counsel or others via phone or internet"). (*See generally* Dkt. (reflecting dozens of filings by Plaintiff during his period of service).) That reluctance is compounded by the fact that Plaintiff's active-duty status was due to conclude on September 30, 2025. (*See* Dkt. No. 67-1 (deployment letter specifying that Plaintiff would be deployed as of January 31, 2025, and that his active-duty status would conclude on September 30, 2025).) As that date has now passed, Plaintiff presumably will face no unforeseen impediments related to his service. Allowing Plaintiff to invoke the SCRA and to obtain a stay in these circumstances would permit him an "unwarranted advantage over civilian litigants" that the Court will not countenance given Plaintiff's conduct in litigating this and the Related Action. *George P. v. Superior Court*, 127 Cal. App. 4th 216, 225 (Ct. App. 2005).

ii. The Tolling Provision

Plaintiff asserts that the Act's provision tolling statutes of limitations, 50 U.S.C. § 3936, applies to pleadings and responsive pleadings. (*See* Dkt. No. 45 ¶¶ 5, 7; Dkt. No. 46 at 6.) Although Plaintiff represents that a subsection of 50 U.S.C. § 3936 contains language to that effect, (Dkt. No. 46 at 6 (representing that "Subsection (b) clarifies 'This section shall apply to any action or proceeding in a court . . . including any period for filing of any pleading, responsive pleading, or the prosecution of any appeal'")), there is absolutely no language to that effect in § 3936. That Section provides, in full:

(a) Tolling of statutes of limitation during military service

> The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State (or political subdivision of a State) or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.
>
> (b) Redemption of real property
>
> A period of military service may not be included in computing any period provided by law for the redemption of real property sold or forfeited to enforce an obligation, tax, or assessment.
>
> (c) Inapplicability to internal revenue laws
>
> This section does not apply to any period of limitation prescribed by or under the internal revenue laws of the United States.

*Id.* There is no indication on the face of this section, or in the cases interpreting it, that it would apply to the filing deadlines in an action commenced by a servicemember, or that it would somehow preclude Plaintiff from filing his own motions in any court. Plaintiff asserts that *Gordon v. Pete's Auto Service of Denbigh, Incorporated*, 637 F.3d 454, 458–59 (4th Cir. 2011), supports the conclusion that this section tolls "a wide variety of civil litigation deadlines," but this language does not appear in that opinion. *See id.* (*See also* Dkt. No. 45 at 2.) In the absence of any authority suggesting that the SCRA applies to filing deadlines or prevents Plaintiff from making motions, Plaintiff's argument fails.

   f. Remaining Arguments

  As to Plaintiff's other arguments, the lack of a federal question is irrelevant where diversity jurisdiction exists. *See, e.g.*, *Mulero v. Scheohorn*, No. 10-CV-01522, 2010 WL 5376258, at *2 (D. Conn. Dec. 22, 2010) ("Where no federal question is pleaded, the federal court may nevertheless have diversity jurisdiction."). Plaintiff's initial remand motion included additional cursory challenges to the removal, including a challenge to the sufficiency of Safety

26

National's Rule 7.1 Corporate Disclosure Statement, identification of a purported "conflict" between this Court's prior ruling on his joinder motion in the Related Action and the removal of this Action, and the validity of his own service of process.  (*See generally* Dkt. No. 9; Dkt. No. 10.)  Each of these arguments is underexplained and, in any event, irrelevant to the legal question of whether removal was proper.

With Plaintiff's arguments in favor of remand addressed, the Court turns next to the Defendants' Motions to Dismiss Plaintiff's Amended Complaint.

B. Motion to Dismiss

1. Standard of Review

While a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [their] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ]

complaint must be dismissed."  *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.' "

(alteration adopted) (quoting Fed. R. Civ. P. 8(a)(2))); id. at 678–79 ("Rule 8 marks a notable

and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does

not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendants motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[ ] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Markatos v.*

*Citibank, N.A.*, No. 24-CV-803, 2024 WL 515487 (S.D.N.Y. Dec. 18, 2024) (same).

Moreover, where, as here, a plaintiff proceeds pro se, the Court must construe his

submissions "liberally and interpret it to raise the strongest arguments that it suggests."

*Ashmeade v. Amazon.com*, No. 23-CV-4331, 2024 WL 4266391, at *7 (S.D.N.Y. Sept. 23, 2024)

(alterations adopted) (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)); *see also*

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (same).  Notwithstanding

28

a standard of review comparatively more lenient and favorable to pro se litigants, such treatment

"does not exempt a pro se party from compliance with relevant rules of procedural and

substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation

marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir.

2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules

and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

2. Analysis

As in the Related Action, Plaintiff's Amended Complaint is premised on the argument

that Defendant Safety National erred when it issued the asserted disclaimers of coverage that

pertained to the Related Action. (*See* Am. Compl. 4–6.) To the extent that Plaintiff is again

seeking to recover from an insurer based on the substance of that determination, and as the Court

explained in its March 20, 2025 Opinion:

> Plaintiff does not have standing to assert claims against [Safety National]. In *Lang v. Hanover Insurance Co.*, 820 N.E. 2d 855 (N.Y. 2004), the New York Court of Appeals held that a plaintiff "has no common-law right to seek relief directly from a tortfeasor's insurer," and only has a statutory right to seek such relief "after [a] plaintiff has obtained a judgment in the underlying personal injury action." *Id.* at 858 (emphasis added) (citing N.Y. Ins. L. § 3420(a)(2)). Thus, "[u]nder New York law, claimants may bring a direct action against an insurer *only* if . . . the injured party first obtains a judgment against the tortfeasor, serves the insurance company with a copy of the judgment, and awaits payment for thirty days." *U.S. Underwriters Ins. Co. v. Ziering*, No. 06-CV-1130, 2010 WL 3419666, at *5 (E.D.N.Y. Aug. 27, 2010) (emphasis added) (citing N.Y. Ins. Law § 3420(a)(2)); *see also St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 83 (2d Cir. 2005) ("[U]nder New York law, [the appellant] does not have an interest sufficient to allow it to assert claims directly against [the third parties] as insurers of [the appellee] unless [the appellant] first obtains a judgment against [the appellee]." (citing *Lang*, 820 N.E.2d at 856)); *Zyburo v. Cont'l Cas. Co.*, 60 F. Supp. 3d 531, 535 (S.D.N.Y. 2014) (dismissing an action against a tortfeasor's insurer for lack of standing where the plaintiff "ha[d] not yet obtained a judgment against the insured" (citing *Lang*, 820 N.E.2d at 858)). Accordingly, multiple courts in the Second Circuit have held that injured parties "have no standing to pursue a declaratory judgment against an insurer unless and until the requirements of § 3420, including securing a judgment, have been satisfied." *See Kehagias v.*

29

*Philadelphia Indem. Ins. Co.*, 345 F.R.D. 46, 52 (S.D.N.Y. 2023) (collecting cases). And for the same reason, "courts in this Circuit have consistently denied intervention to injured parties in coverage actions between the insured and their insurer." *Id.* (collecting cases).

Applying the same reasoning here, the Court concludes that Plaintiff does not have standing to join Safety National as a party to this Action or otherwise assert any claims against Safety National prior to Plaintiff first obtaining a judgment from the City that has gone unsatisfied for over thirty days. *See Knox v. Ironshore Indemnity Inc.*, No. 20-CV-4401, 2021 WL 256948, at *3 (S.D.N.Y. Jan. 26, 2021) (dismissing an action because, "[s]ince [p]laintiffs do not have a judgment against the insured party [defendant], [p]laintiffs have not satisfied a condition precedent to suit under the direct action statute"); *Hartford Ins. Co. v. Mitlof*, 123 F. Supp. 2d 762, 770 (S.D.N.Y. 2000) (holding that personal injury claimant could not intervene either as a right or permissively, as "intervention would circumvent the judgment requirement of § 3420, a prerequisite for actions by injured third parties against indemnity insurers, and create a right not contemplated by the state legislature.").

*Fecteau*, 2025 WL 873018, at *16 (footnotes omitted).  Putting to the side that Sedgwick has presented credible evidence that it is not an insurer, (*see* Dkt. No. 54-2 ¶ 6), the same analysis applies to any effort to assert similar direct claims against Sedgwick under an insurance policy.[21]

---

[21] Safety National argues that collateral estoppel bars the relitigation of this question. (*See* Dkt. No. 60 at 16–20.)  In this Action, federal law of collateral estoppel applies because the prior decision is a federal one.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) ("We apply federal law in determining the preclusive effect of a federal judgment . . . ."); *see also Purdy v. Zeldes*, 337 F.3d 253, 258 n.5 (2d Cir. 2003) ("It is well established that federal law on collateral estoppel applies to determine the preclusive effect of a prior federal judgment.").  "Under federal law, collateral estoppel applies when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Purdy*, 337 F.3d at 258 (quotation marks and citations omitted).

The Court already determined in the Related Action that Plaintiff cannot, under New York law, "bring a direct action against an insurer," without first obtaining a judgment against the tortfeasor and awaiting payment for 30 days. *Fecteau*, 2025 WL 873018, at *16 (quotation marks and citation omitted).  The issue of whether Plaintiff could raise a direct claim against Safety National was raised in the Related Action, actually litigated and decided, Plaintiff had a full and fair opportunity to litigate the issue, and resolution of the issue would ultimately be necessary to support a valid and final judgment on the merits. *See Fecteau*, 2025 WL 873018, at

In an attempt to avoid the Court's prior ruling, Plaintiff recasts his request for relief under the Policy: he argues that, rather than a direct claim to recover, he is asserting causes of action for bad faith claims handling and for deceptive practices under N.Y. General Business Law § 349. (Am. Compl. at 6–7.) The Court determines, however, that Plaintiff's Amended Complaint does not adequately state either claim.

To start, Plaintiff's bad faith claims handling claim must be dismissed on the basis that, as all four appellate departments in New York agree, there is "no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance policy." *Cont'l Cas. Co. v. Nationwide Indem. Co.*, 792 N.Y.S.2d 434, 435 (App. Div. 2005); *accord Zawahir v. Berkshire Life Ins. Co.*, 804 N.Y.S.2d 405, 406 (App. Div. 2005) (same); *Alexander v. Geico Ins. Co.*, 826 N.Y.S.2d 777, 778 (App. Div. 2006) (same); *Dersam v. Ontario Ins. Co.*, 230 N.Y.S.3d

---

*15. At least some courts have treated a motion to dismiss decision, in similar circumstances, as sufficient to support issue preclusion. *Papaya Gaming, Ltd. v. Fair Play for Mobile Games*, No. 25-CV-5573, 2026 WL 558698, at *9–10 (S.D.N.Y. Feb. 27, 2026) (concluding that issue preclusion applied where the plaintiff had earlier-asserted counterclaims as a defendant in another proceeding, those counterclaims had twice been dismissed at the motion to dismiss stage and, rather than waiting until the remaining aspects of the first action were resolved and appealing that decision to the Second Circuit, the plaintiff attempted to file an action in another jurisdiction affirmatively asserting the counterclaims); *see also id.* at *11–12 (explaining that claims dismissed in decisions "applying the Rule 12(b)(6) standard" are sufficient to constitute an adjudication on the merits and final such that they may support issue preclusion). But as Plaintiff's claims undoubtedly fail on the merits for the reasons described in this Opinion, the Court need not wade into the question whether this decision is justified under the doctrine of issue preclusion, or whether it would be prudent to wait for some more-final termination of the Related Action for that doctrine to come into effect. *See* 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Prac. & Proc. Juris. § 4434 (3d ed. 2025) (describing progressive "relax[ation of] traditional views of the finality requirement by applying issue preclusion to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief").

828, 832 (App. Div. 2025) (same).[22]  Any bad faith claim against either Safety National or

Sedgwick must be dismissed on the basis that it is indistinguishable from the direct breach claim

that, as the Court already determined, Plaintiff could not assert without a judgment in his favor in

the Related Action.[23]  *See also McWilliams v. Liberty Mut. Grp., Inc.*, No. 24-CV-3432, 2024

WL 3925537, at *2, 4 (S.D.N.Y. Aug. 23, 2024) (dismissing, *inter alia*, bad-faith claim against

both insurer and claims administrator "for the same reasons" that the plaintiff did not have a

contract with the insurer or assignment from the insured party).[24]

As to New York's General Business Law § 349, Safety National argues that this claim is

barred by the doctrine of collateral estoppel.  (Dkt. No. 60 at 18–19.)  The Court disagrees.  That

---

[22] There does exist a cause of action that the *insured party* can raise against the insurer where a claim is brought against the insured party.  *See Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002); *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 886 N.E.2d 127, 131 (N.Y. 2008).  But Plaintiff is not the insured party, and so cannot avail himself of such a cause of action.  *See Harris*, 310 F.3d at 80.

[23] The Court notes further that Plaintiff apparently backtracked on his bad faith tort claim. He says in his opposition brief that he "is not asserting a common law bad faith claim" but seeks solely to bring a "statutory claim under GBL § 349."  (Dkt. No. 78 at 10.)

[24] The claim against Sedgwick fails for the additional reason that New York State courts regularly hold that claims against insurance administrators must be dismissed where those entities "act[] as an agent for a disclosed principal for which there is no liability based upon the allegations [pleaded]" in a complaint.  *M.V.B. Collision Inc. v. Allstate Ins. Co.*, 49 N.Y.S.3d 837, 846 (Dist. Ct. 2017); *see also Bardi v. Farmers Fire Ins. Co.*, 687 N.Y.S.2d 768, 787 (App. Div. 1999) (same).  The allegations in Plaintiff's Amended Complaint are consistent with Sedgwick acting, at best, as a disclosed principal for Safety National.  (*See* Am. Compl. ¶ 9 ("Safety National, through Sedgwick, issued a denial of coverage"); Dkt. No. 18-2 at 2 ("This letter is being sent on behalf of Safety National Casualty Corporation . . . .").)
    To the extent that Plaintiff shifted his position in his opposition to Sedgwick's Motion to Dismiss, and now contends that Sedgwick should have advised Plaintiff that Safety National had not denied coverage—or possibly asserts that "tortious conduct and procedural manipulation" occurred—Plaintiff has cited no basis for any duty that Sedgwick might owe to him that could support a claim under either contract or tort.  (*See* Dkt. No. 72 at 2, 4.)  As discussed above, Plaintiff is not a party to the Policy and has not identified any alternative theory that might permit him to invoke the Policy.  Accordingly, this theory of the claim and/or new claims—improperly asserted for the first time in responsive papers—fail.

claim is not a direct claim, and so the question of whether Plaintiff had standing to bring it is not an "identical issue" to one decided in the Related Action—indeed, it was not "actually litigated" in that decision or even raised. *See Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (explaining the issue must have been "identical" to that raised in the precious proceeding and "actually litigated and decided," among other requirements, to have preclusive effect). As a result, and despite the Defendants' arguments to the contrary, Plaintiff is not collaterally estopped from asserting that claim here. *See id.* at 414 (concluding that other theories of a due process violation were not necessary or actually decided, and therefore did not support issue preclusion); *Andrews v. U.S. Bank Nat'l Ass'n as Tr. for Citigroup Mortg. Loan Tr. 2006-WFHE3*, No. 22-CV-456, 2023 WL 4273898, at *2 (D. Conn. June 29, 2023) (declining to apply issue preclusion where the movant "[did] not demonstrate[] that the relevant issue . . . []actually ha[d] been litigated by a previous court."). Moreover, it appears that this type of claim is not subject to the same state statutory requirements as the direct-action statute. *See generally, e.g.*, *Ng v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 23-CV-02145, 2025 WL 579960, at *4 (S.D.N.Y. Feb. 21, 2025) (holding that this requirement was limited to sustaining a cause of action under § 3420, and did not apply to indirect actions such as promissory or equitable estoppel); *Ling v. Erie Ins. Co.*, No. 16-CV-5281, 2017 WL 3084420, at *3, 6–7 (S.D.N.Y. July 19, 2017) (analyzing direct claims under N.Y. Ins. L. § 3420 separately from claims brought under N.Y. Gen. Bus. Law § 349(a)); *see also id.* at *7 ("Because the insured's rights under Section 349 are distinct from their rights under the policy, Section 3420 is inapposite—it authorizes a victim only to bring claims that arise 'under the terms of the policy.'"). Accordingly, the Court will evaluate whether Plaintiff's Amended Complaint states a viable claim against either Sedgwick or Safety National under N.Y. General Business Law § 349.

To state a plausible claim under General Business Law § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of New York v. Smokes—Spirits.Com, Inc.,* 911 N.E.2d 834, 838 (N.Y. 2009). To satisfy the first requirement at the pleading stage, Plaintiff must allege acts that "have a broader impact on consumers at large." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). "The conduct need not be repetitive or recurring but [the] defendant's acts or practices must have a broad impact on consumers at large." *New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 770 (N.Y. 1995). So, "private contract disputes unique to the parties . . . would not fall within the ambit of the statute." *Oswego Laborers' Loc. 214 Pension Fund*, 647 N.E.2d at 744.

Assuming (for the purposes of resolving the Motions to Dismiss) that Plaintiff has standing to assert this claim based on the letter he received from Sedgwick, his claim under N.Y. GBL § 349 fails because his allegations do not state a claim under that statute. In his Amended Complaint, Plaintiff offers no more than a few sentences, which are themselves conclusions of law, to support the conclusion that Defendants engaged in consumer-oriented conduct. (*See* Am. Compl. ¶ 25 ("These acts are consumer-oriented and likely to mislead third party claimants, policy holders, and the public.").) There are no facts alleged to suggest that the interaction was anything but "unique to the[] two parties . . . or a single shot transaction." *Oswego Laborers' Loc. 214 Pension Fund*, 647 N.E.2d at 745 (quotation marks and citation omitted); *see also New York Univ.*, 662 N.E.2d at 770–71 (distinguishing case from *Oswego* on the basis that the asserted claim was unique to the parties, rather than part of a general sales or product practice); *Sichel v. UNUM Provident Corp.*, 230 F. Supp. 2d 325, 330 (S.D.N.Y. 2002) (dismissing claim

34

that was a "private" dispute between Plaintiff and his insurers, rather than "any facts tending to

establish a 'national policy,' or an 'extensive scheme'" with "'a broad impact on consumers at

large'" (citations omitted)).[25]  Plaintiff's only response on this point is that "standardized

disclaimers, form letters, or generalized policy tactics that have a broader public impact" can

satisfy the consumer-oriented requirement.  (Dkt. No. 78 at 7 (citing *N. State Autobahn, Inc. v.

Progressive Ins. Grp. Co.*, 953 N.Y.S.2d 96 (App. Div. 2012).)  But Plaintiff's Amended

Complaint and various filings do not allege standardized or generalized tactics—rather, he

attempts to bring a claim based on the two purported disclaimer of coverage letters sent to him

and to the City and the supposed "inconsisten[cy]" of those letters.  (Dkt. No. 18 ¶ 24.)  This

allegation is not sufficient for the Court to conclude that the Defendants were engaged in

consumer-oriented behavior.[26]  *See Ramirez v. Wells Fargo Bank, N.A.*, No. 19-CV-05074, 2021

WL 9564023, at *12 (E.D.N.Y. Mar. 24, 2021) (dismissing NY GBL § 349 claim where the

plaintiff failed to offer more than "conclusory" allegations of consumer-oriented conduct); *Violet

---

[25] To the extent that Plaintiff seeks to demonstrate consumer-oriented conduct through submitting a California Department of Insurance Market Conduct Report adopted April 30, 2025, concerning claims practices of Safety National, the Court takes judicial notice of that report and concludes that it is irrelevant: it is unclear whether any of the claims denials it describes occurred in similar circumstances and, in any event, the report involves claims under an entirely different statute.  (*See* Dkt. No. 64.)  The same is true of the materials attached to Plaintiff's "Declaration in Further Support of Opposition to Safety National Casualty Corporation's Motion to Dismiss," which largely involve information about the finances of Safety National and structure and business strategies of Tokio Marine Holdings, (*see* Dkt. No. 96 and accompanying exhibits), and those attached to the Declaration in Opposition to Defendant's Motion for Sanctions that Plaintiff filed, (*see, e.g.*, Dkt. No. 109 and accompanying exhibits).

[26] Moreover, these facts differ in kind from those alleged in the case Plaintiff cites; that case involved allegations of a routinized program of misrepresentations as to the "workmanship, price, timeliness of service, and character" of certain repair shops. *N. State Autobahn, Inc.*, 953 N.Y.S.2d at 99, 102.  These misrepresentations allegedly misled large numbers of customers to believe that they needed to seek repairs at other shops. *Id.*  The scope of those allegations is undoubtedly more public-facing and broad than the facts described here.

*Realty, Inc. v. Affiliated FM Ins. Co.*, 267 F. Supp. 3d 384, 391 (W.D.N.Y. 2017) (dismissing

NY GBL § 349 claim because, *inter alia*, "[the p]laintiff . . . failed to allege any act of deception

aimed at consumers"); *Gov't Emps. Ins. Co. v. Hazel*, No. 11-CV-00410, 2014 WL 4628655, at

*14 (E.D.N.Y. Aug. 11, 2014) (concluding that the plaintiff "failed to meet his pleading burden

. . . because stating that [an insurer's] acts and practices have an 'effect on the [relevant] industry

in New York' does not . . . [allege] a consumer-oriented [effect]"), *report and recommendation*

*adopted*, No. 11-CV-0410, 2014 WL 4628661 (E.D.N.Y. Sept. 15, 2014); *Sichel*, 230 F. Supp.

2d at 330 (dismissing complaint that did not "include any facts tending to establish a national

policy, or an extensive scheme that had a broad impact on consumers at large," but rather

involved injury to "[the plaintiff] alone, not to the public" (quotation marks and citations

omitted)).  Accordingly, Plaintiff's Amended Complaint does not state a claim under N.Y.

General Business Law § 349.

In an unauthorized request to "Supplement [his] Amended Complaint," Plaintiff includes

two documents that, he says, are complaints sent to the New York State Department of Financial

Services.  (*See* Dkt. No. 123 at 1.)  Putting aside that the Court has serious doubts about the

veracity of these letters, and would, in the alternative, conclude that the request to amend was not

made in good faith, these complaints do not render Plaintiff's asserted claim under N.Y. General

Business Law § 349 viable.[27]  The Complaints assert that the company "issued a blanket

---

[27] Plaintiff's submission requests that he be permitted to make this amendment under
Federal Rule of Civil Procedure 15(d).  (Dkt. No. 123 at 1–2.)  A supplemental pleading may be
allowed even where an "original pleading is defective in stating a claim," Fed. R. Civ. P. 15(d),
but the Second Circuit has instructed that, "undue delay, bad faith, dilatory tactics, undue
prejudice to the party to be served with the proposed pleading, or futility," *Quaratino v. Tiffany*
*& Co.*, 71 F.3d 58, 66 (2d Cir. 1995), are reasons to deny a motion to file a supplemental
pleading.  In the alternative, the Court would therefore conclude that the requested amendment,

disclaimer of coverage" without sufficient investigation, (Dkt. No. 123-1 at 3), and claim that

Safety National sent a conditional denial of coverage without saying if they "did an investigation

[of the complainant's] claim," (Dkt. No. 123-2 at 3).  They do not elaborate further on the

circumstances or facts of these denials, however.  (*See* Dkt. No. 123-1; Dkt. No. 123-2.)  Instead,

they are replete with conclusory legal statements, (*see* Dkt. No. 123-1 (suggesting that the

"disclaimer categorically denies all coverage based on assumed facts and legal conclusions that

are expressly disputed in the underlying pleadings")), or take issue with the asserted conditional

---

here, would be inappropriate in light of Plaintiff's continued bad faith litigation practices in this Action.  Plaintiff "proposed the amendment after the [D]efendant[s'] motion[s] [to dismiss] revealed that [P]laintiff's theory of [the claim] was flawed; only then did [P]laintiff seek to amend to switch [his] theory" to one that, assertedly, would rely on other complaints.  *Dodson v. New York Times Co.*, No. 97-CV-3838, 1998 WL 702277, at *9 (S.D.N.Y. Oct. 7, 1998) (describing *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 304 (S.D.N.Y. 1996)).  He made this switch after dozens of filings that did no more than conclusorily assert publicly-oriented behavior based on the single interaction between Plaintiff and Safety National.  *See State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (affirming a district court's denial of leave to amend where the reason for the movant's late-game proposed amendment "was a tactical one").  Moreover, looking to the "evolutionary development" of this case and the "history of this litigation," *Oneida Indian Nation of New York State v. Cnty. of Oneida, N.Y.*, 199 F.R.D. 61, 81 (N.D.N.Y. 2000) (quoting in part *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. at 304), it is clear that Plaintiff's request to amend is simply the latest step in his campaign of harassment against Safety National, which, as described below, readily permits a finding of bad faith litigation behavior.  Accordingly, the Court concludes that, even if these three complaints could somehow constitute consumer-oriented behavior, the request to amend is likely part of Plaintiff's continued campaign of harassment.

In its letter response, Safety National accuses Plaintiff of "orchestrating [the] complaints in conjunction with his ongoing bad faith campaign of harassment of Safety National," as it represents that the complainants are Plaintiff's neighbors and that it has certain direct communications that suggest that this gamesmanship is occurring. (Dkt. No. 125 at 2.)  Safety National requests an inquest as to whether "Plaintiff is responsible for providing illicit legal counseling and the preparation of various legal documents and filings" on the complainants' behalf.  (*Id.* n.1.)  At least some of the content of the complaints supports Safety National's position.  (*See* Dkt. No. 123-2 at 3 (claiming that "[Ev]eryone knows this company lies. [T]hey did it to my next door neighbor too[] . . . [S]afety told m[y] neighbor they disclaimed coverage, and then told the city somethin[g] diffe[rent].").)  Given that the record before the Court would, in the alternative, be sufficient to permit a finding of bad faith without such an inquest, the Court declines to conduct one at this juncture.

nature of the disclaimer that each complainant reportedly received, (Dkt. No. 123-2 ("The letter just says 'if it is later found,' which don[']t make sense and leaves me with no defense.")). When viewed in the light most favorable to Plaintiff, these complaints suggest at *most* that Safety National issued three conditional denials of claims without investigating them adequately. "Consumer-oriented conduct does not require a repetition or pattern of deceptive behavior." *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744. Rather, there must be a "*broader impact* on consumers at large." *Id.* (emphasis added). What these letters would prove, is, at most, three "private contract disputes" that would "fall outside the purview of GBL § 349." *Haynes v. Planet Automall, Inc.*, 276 F.R.D. 65, 78 (E.D.N.Y. 2011); *see also True Bus. Funding LLC v. Sonata Constr. LLC*, No. 25-CV-680, 2025 WL 2959310, at *4 (E.D.N.Y. Oct. 17, 2025) (concluding that the complaint failed to state a Section 349 claim where the plaintiff did not allege conduct with a broad impact, but involved exclusively private contract disputes); *Francabandiero v. Nat'l Gen. Ins. Co.*, No. 22-CV-00641, 2023 WL 2253194, at *7 (W.D.N.Y. Feb. 23, 2023) ("Other than the conclusory allegations of their [c]omplaint, [the] plaintiffs offer no evidence that the conduct of which they complain has ramifications for the public at large beyond the parties to this case . . . . Therefore, this claim also fails.").[28]

---

[28] In yet another unauthorized submission, Plaintiff attempts to supplement his Amended Complaint with a "Supplemental Claims-Handling Summary" that, it seems, he created. (*See* Dkt. No. 129 at 2.) He appends a document stylized like an executive report that appears to contain additional allegations of purportedly consumer-oriented behavior and was plainly "Produced by Matthew J. Fecteau." (*See* Dkt. No. 129-1 at 2.) This filing was "extremely confusing, if not completely incomprehensible. The mere filing of [such] documents, much less the interpretation of them, consumes large amounts of the [C]ourt's scarce resources." *Davis v. Dep't of State*, No. 13-CV-58, 2014 WL 11514765, at *5 (E.D. Va. Aug. 1, 2014). The Court's Individual Rules exist for a reason, and Plaintiff's repeated efforts to flout them are profoundly disruptive to the Court's docket.

In further support of his position, Plaintiff points to recently enacted changes to N.Y. General Business Law § 349 proposed by the State Legislature in New York's Senate Bill S-8416 (2025-2026), the "fostering affordability and integrity through reasonable (FAIR) business practices act."  (*See* Dkt. No. 78 6–7.)  *See also* Senate Bill S8416, New York State Senate (last

---

Nevertheless, Court has reviewed this document in the name of fairness to Plaintiff as a pro se litigant, and construes the document as a request that the Court consider the materials contained therein as part of the allegations contained within Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 15(d).  The Court denies this request for the same reasons described in footnote 27, *supra*; namely, Plaintiff has repeatedly engaged in bad faith litigation tactics throughout the course of this and the related Actions, and only changed his tactics at a late stage of the game.

But even looking to the substance of the document, it does not support the conclusion that Plaintiff has stated any viable claim.  It appears that, to create this "Report," Plaintiff obtained several other asserted disclaimers of coverage in other lawsuits from Safety National as the City's Insurer that, in his view, are misleading.  (Dkt. No. 129-1 at 6 (chart summarizing the attached disclaimers).)  Like the complaints discussed above, the letters do not suffice to sustain a claim under N.Y. General Business Law § 349.  They lack any clear connection to the denial Plaintiff received, and, in any event, Plaintiff does not sufficiently explain how this series of one-off decisions are "consumer oriented" behavior in violation of N.Y. General Business Law § 349.  *E.g. Deutsche Bank Nat'l Tr. Co. as Tr. for Am. Home Mortg. Assets Tr. 2006-5 v. Marino*, 227 N.Y.S.3d 270, 273 (App. Div. 2025) (dismissing claim where no conduct was alleged that was consumer-oriented).  The Court notes further that several of these letters lack any obvious connection to the facts alleged in this Action, (*see, e.g.*, Dkt. No. 129-1 at 21 (explaining that coverage might not extend to wrongful employment practices); *id.* at 37 (explaining that coverage might not extend to allegations of intentional assault and battery); *id.* at 50 (explaining that coverage might not extend to claims arising out of eminent domain principles); *id.* at 77 (same)), though some denials involved the same coverage exclusions, (*see id.* at 35 (stating coverage might not extend to "law enforcement activities")).  Without further allegations as to what, exactly, the consumer-oriented conduct was (and how it was misleading), the asserted disclaimers of coverage do not cure the deficiencies in Plaintiff's pleadings.

The document also cites various "Statutory and Regulatory Provisions" and state cases without any argument as to the relevance of these laws or decisions to this Action.  (*Id.* at 9–10.) The Court has considered the legal authority cited in the document when deciding the Motions addressed herein. The Court notes further that "New York Insurance Law Section 2601 and part 216 of New York's insurance regulations," cited in the document, (*see id.* at 9), "do not provide individuals with private causes of action."  *Harner v. Allstate Ins. Co.*, No. 11-CV-2933 CS, 2012 WL 12326459, at *7 (S.D.N.Y. Sept. 7, 2012).

visited Mar. 23, 2026), https://www.nysenate.gov/legislation/bills/2025/S8416.[29]  He takes the position that the Act now prohibits "unfair, deceptive, or abusive acts or practices that cause substantial injury to any person, including persons other than consumers, and makes such conduct actionable regardless of whether it is consumer-oriented . . . ."  (Dkt. No. 119 at 2.)[30]  There is (at least one) fatal flaw with Plaintiff's position.  The text of the FAIR Act states that the change to the "consumer-oriented" requirement applies solely to an action "by the Attorney General" of New York.  *See* Senate Bill S8416, New York State Senate, https://www.nysenate.gov/legislation/bills/2025/S8416 (last visited Mar. 23, 2026).  In other words, the consumer-oriented requirement appears to remain in any action brought by a private individual.  The legislative history of the FAIR Act confirms this reading: the Sponsor Memo for the Bill explains, "The Act does not disturb existing caselaw concerning the application of the consumer-oriented doctrine to the private right of action.  It simply provides that this doctrine no

---

[29] Plaintiff requests that the Court take judicial notice of the FAIR Act.  (Dkt. No. 71.)  Putting the state legislature's tortuous backronym to the side, *see Backronym*, Wikipedia, https://en.wikipedia.org/wiki/Backronym (last visited December 17, 2025), the Court does so, *see Wells Fargo Bank*, 127 F. Supp. 3d at 166–67 (determining it would be appropriate to take judicial notice of documents retrieved from official government websites, noting that courts "routinely" do so, and collecting cases). The Court chooses to refer directly to the state legislature's website for information about the Act, however, rather than the materials submitted by Plaintiff.

Plaintiff and Safety National have each requested that the Court disregard parts of the other's letter-briefing related to the FAIR Act.  (*See* Dkt. No. 124 at 1 (arguing that a letter from Safety National was an unauthorized sur-reply, and requesting that the Court "disregard those portions of Defendant's submission that constitute unauthorized supplemental briefing"); Dkt. No. 126 at 2 (asking that the Court disregard Plaintiff's submission).)

[30] After strenuously arguing that the FAIR Act applied to his claims, Plaintiff suddenly reversed course in a letter dated January 15, 2026 (but docketed on January 14, 2026).  (*See* Dkt. No. 128 at 2.)  Without an explanation for the flip-flop, he purports to "confirm[] that his claim proceeds exclusively under the pre-amendment version" of Section 349, and disclaims any reliance on "any statutory amendment."  (*Id.*)  In any event, Plaintiff's claim fails under either standard.

longer applies to Attorney General enforcements." *Senate Bill S8416*, New York State Senate, https://www.nysenate.gov/legislation/bills/2025/S8416 (last visited Mar. 23, 2026) (citation omitted).  As Plaintiff attempts here to bring a private right of action, he would still be required to allege consumer-oriented conduct, and he has not done so.

For the reasons described above, Plaintiff's Complaint does not state a viable claim against Safety National or Sedgwick.  Defendants' Motions to Dismiss are therefore granted.  The Court turns next to Defendant Safety National's Motion for Sanctions.

C. Sanctions

1. Standard of Review

a. Sanctions Against Pro Se Litigant Under Rule 11

"Federal Rule of Civil Procedure 11[(b)] provides that, 'by presenting to the court a pleading, written motion, or other paper,' an attorney [or unrepresented party] 'certifies that to the best of her knowledge, information, and belief,' formed after a reasonable inquiry, the filing is: (1) 'not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation'; (2) 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law'; and (3) supported by available evidence, or evidence likely to be discovered on further investigation." *Kyros L. P.C. v. World Wrestling Entm't, Inc.*, 78 F.4th 532, 543 (2d Cir. 2023) (quoting Fed. R. Civ. P. 11(b)) (alterations adopted), *cert. denied*, 144 S. Ct. 822 (2024).

"The Court may award sanctions against a party if the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court." *Trireme Energy Holdings, Inc. v. RWE Renewables Ams.*, LLC, No. 22-CV-7439, 2025 WL 1779016, at *3 (S.D.N.Y. June 27, 2025) (internal quotation marks omitted) (quoting *Mason Agency Ltd. v.*

*Eastwind Hellas SA*, No. 09-CV-6474, 2009 WL 3787261, at *2 (S.D.N.Y. Nov. 11, 2009)); *see also Avanti Sys. USA, LLC v. Sanchez*, No. 24-CV-6704, 2025 WL 2773306, at *10 (S.D.N.Y. Sept. 26, 2025) (same). To conclude that a legal argument is frivolous, the Court must determine that "under an objective standard of reasonableness . . . it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Gong v. Sarnoff*, No. 23-CV-343, 2023 WL 5372473, at *10 (S.D.N.Y. Aug. 22, 2023) (alterations adopted) (internal quotation marks omitted) (quoting *Galonsky v. Williams*, No. 96-CV-6207, 1997 WL 759445, at *3 (S.D.N.Y. Dec. 10, 1997); *see also Margo v. Weiss*, 213 F.3d 55, 64 (2d Cir. 2000) ("Rule 11(b)(2) establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." (quotation marks and citation omitted)); *Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 222 (S.D.N.Y. Feb. 2, 2017) ("A filing is frivolous if it is clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." (quotation marks and citation omitted), *aff'd*, 706 F. App'x 44 (2d Cir. 2017) (summary order)). "Courts have cautioned litigants that Rule 11 sanctions are reserved for extraordinary circumstances." *Hubbuch v. Cap. One, N.A.*, No. 25-CV-406, 2025 WL 1983218, at *12 (S.D.N.Y. June 11, 2025) (quoting *Galin v. Hamada*, 283 F. Supp.3d 189, 201 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018) (summary order)), *report and recommendation adopted*, No. 25-CV-406, 2025 WL 1934472 (S.D.N.Y. July 15, 2025).

"Rule 11 applies both to represented and *pro se* litigants." *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989); *see also Kumaran v. Nat'l Futures Ass'n*, No. 20-CV-03668, 2024 WL 3429128, at *1 (S.D.N.Y. July 16, 2024) ("The language of Rule 11(a) and (b) make clear that the Rule applies to 'unrepresented' parties, that is, parties who are appearing pro

42

se." (emphasis omitted)).  Unlike represented parties, pro se parties receive "greater leniency" when the court considers "whether or not to impose Rule 11 sanctions."  *Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 142 (S.D.N.Y. 2005), *aff'd*, 2008 WL 749564 (2d Cir. Mar. 20, 2008). However, greater leniency does not provide a pro se plaintiff with a "license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets."  *Malley v. N.Y.C. Bd. of Educ.*, 207 F. Supp. 2d 256, 259 (S.D.N.Y. 2002) (quoting *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988)).

### b. Sanctions Under the Court's Inherent Authority

In addition to the authority to impose sanctions under Rule 11, a "federal court may 'exercise its inherent power to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 141 (2d Cir. 2023) (quoting *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013)); *see also Hinds v. Cnty. of Westchester*, No. 11-CV-7265, 2020 WL 7046843, at *5 (S.D.N.Y. Dec. 1, 2020) (same).  "This authority stems from the very nature of the courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Hinds*, 2020 WL 7046843, at *5 (quoting *In re Ski Train Fire in Kaprun Austria on Nov. 11, 2000*, MDL No. 1428, 2007 WL 2398697, at *5 (S.D.N.Y. Aug. 16, 2007)); *see also Kassenoff v. Kassenoff*, No. 22-CV-2162, 2024 WL 291225, at *2 (S.D.N.Y. Jan. 25, 2024) (same).

"The standard for imposing sanctions pursuant to the Court's inherent power is . . . : (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes," *i.e.*, the entity acted in bad faith.  *Jones v. Combs*, 759 F. Supp. 3d 534, 539 (S.D.N.Y. 2024) (quotation marks and citations omitted); *see also DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (explaining that a finding of "bad faith" is

43

necessary before a court exercises its inherent authority to impose sanctions).  The Court's

inherent authority "extends to a full range of litigation abuses," rather than being limited to

certain individuals or conduct.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).  It therefore

also empowers the court to impose a range of penalties, such as awarding attorney's fees to the

prevailing party, *New York City Health & Hosps. Corp. v. Hunt*, No. 23-CV-1450, 2024 WL

5710651, at *7 (S.D.N.Y. Dec. 4, 2024) ("Attorneys' fees can be awarded as sanctions

. . . ."), *report and recommendation adopted,* No. 23-CV-1450, 2025 WL 2503250 (S.D.N.Y.

Aug. 31, 2025), or imposing sanctions that "deter abuse of the judicial process and prevent a

party from perpetrating a fraud on the court," *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235

(2d Cir. 2020).

The potency of the Court's authority requires that the court exercise its inherent powers

"with restraint and discretion."  *Chambers*, 501 U.S. at 44.  "[A] court exercising its inherent

powers will often have to overlook statements that are merely false, even suspiciously so," unless

those statements were made in bad faith.  *State v. United States Dep't of Com.*, 461 F. Supp. 3d

80, 89 (S.D.N.Y. 2020).

2. Analysis

As described above, Safety National moved for sanctions pursuant to Rule 11 and the

Court's inherent authority.  (*See* Dkt. No. 94 at 13–27.)[31]  Plaintiff filed a letter asking the Court

to strike certain materials attached to Defendant's Motion, (Dkt. No. 97), which the Court

denied, (Dkt. No. 105 at 3).  Plaintiff then filed a request for a premotion conference to strike

---

[31] When citing Defendant's Memorandum in Support of its Motion for Sanctions, the Court uses the page numbers contained on the document itself, rather than those generated by the Court's Electronic Case Filing system.

similar materials and requesting other relief, (Dkt. No. 107; Dkt. No. 108), as well as a memorandum of law, (Dkt. No. 110).[32]  The Court notes that Safety National has satisfied the requirements that a Rule 11 Motion be served on the party that is subject of the motion, that the safe harbor window has passed, and that the subject party (Plaintiff) has not withdrawn or corrected his filings, except as otherwise described below.

> a. Filing of the Amended Complaint

Safety National first asserts that Plaintiff should be sanctioned on the grounds that he presented frivolous legal arguments to the Court when he filed his Complaint, despite being informed by Safety National that his legal arguments lacked merit.  (Dkt. No. 94 at 16.)  Namely, Safety National rests on the fact that Plaintiff "commenced this lawsuit against Safety National after this Court already ruled that he could not sustain a direct action" given that, as the Court explained in its decision in the Related Action, he lacked standing to bring such an action prior to judgment being entered.  (Dkt. No. 94 at 22–24.)  Accordingly, it asserts, Plaintiff's filing of the Amended Complaint merits sanctions.  (*Id.*)

It is beyond dispute that the Court held that Plaintiff could not bring any direct claims against the company, *Fecteau*, 2025 WL 873018, at *16, and that Plaintiff's initial Complaint in state court included such direct claims (*i.e.*, for declaratory relief as to coverage obligations and seeking damages for bad faith claims handling), (*see* Compl. at 11–14). Even after Plaintiff filed his Amended Complaint, he sought to assert a direct claim for bad faith claims handling.  (*See*

---

[32] Plaintiff requested that he be given an opportunity to supplement his opposition. (Dkt. No. 111.)  The Court has considered the information contained in this filing in conjunction with its decision on the Motion for Sanctions, in the name of fairness to the pro se litigant. The Court denies the request for a pre-motion conference seeking leave to file a Motion to Strike. (Dkt. No. 107.)

Dkt. No. 18 ¶¶ 18–22.)  Plaintiff did not have standing to bring these direct claims, and Plaintiff had already been advised of that fact in the Court's prior ruling.  The Court also warned Plaintiff that persisting in his attempts to continue to enmesh Safety National in issues related to his case against Mount Vernon, "without valid reason," could subject him to sanctions.  *Fecteau*, 2025 WL 873018, at *16 n.21 ("Plaintiff is warned that if he persists in contacting Safety National or attempting to involve it in this Action any further, without valid reason, the Court will consider sanctions.").

The Court's prior ruling and Plaintiff's continued persistence in bringing these claims would ordinarily suggest that sanctions are appropriate here.  "In general, courts have been more willing to sanction a pro se litigant where he or she has more familiarity or competence with the law, or has been put on notice as to the possibility of sanctions."  *Chien v. Skystar Bio Pharm. Co.*, No. 09-CV-149, 2009 WL 2487983, at *3 (D. Conn. Aug. 12, 2009) (emphasis omitted), *aff'd*, 378 F. App'x 109 (2d Cir. 2010).  In the face of "previous litigation on [the same] matter," courts have found pro se litigants sanctionable where they were "already . . . informed that [their] claims were frivolous," and where they were on notice that the opposing party "would seek sanctions if [the litigants] pursued the second action and it was ultimately dismissed."  *Id.*; *see also Parnoff v. Fireman's Fund Ins. Co.*, 796 F. App'x 6, 9 (2d Cir. 2019) (summary order) ("[G]iven that the district court had already rejected a nearly identical argument in [earlier litigation], it was not reasonable for [plaintiff] to believe that his position would be warranted in this case."); *Baasch v. Reyer*, 827 F. Supp. 940, 944 (E.D.N.Y. 1993) ("Where, as here, a Court clearly places a pro se litigant on notice that his or her practice is sanctionable, the pro se litigant cannot be heard to complain that sanctions ought not be imposed because he or she is pro se. Such a result is unfair to the pro se litigant's adversary." (emphases omitted)).

46

As described above, however, Plaintiff ultimately appears to have ceased pursuing the lion's share of his claims through a combination of amending his complaint and an assertion that he "is not asserting a common law bad faith claim" but seeks solely to bring a "statutory claim under GBL § 349." (Dkt. No. 78 at 10.) (*But see* Dkt. No. 110 at 6 (Plaintiff asserting that his "current lawsuit" asserts "causes of action" for "[c]ommon-law bad-faith claim handling" and "[b]reach of the implied covenant of good faith" despite earlier abandonment).) Although Plaintiff has continued to pursue his NY GBL § 349 claim, for the reasons laid out above, Plaintiff's standing to prosecute that claim is evaluated differently and not subject to the same requirements as his direct claims. *See, e.g.*, *Narcisse v. Progressive Cas. Ins. Co.*, 778 F. Supp. 3d 597, 609 (S.D.N.Y. 2025) (explaining that "to recover under the statute, a plaintiff must demonstrate actual injury" (quotation marks and citation omitted)); *Velez v. Lasko Prods., LLC*, 706 F. Supp. 3d 444, 454 (S.D.N.Y. 2023) (concluding claim under NY GBL § 349 adequately alleged where the plaintiff pleaded that he "suffered injury as a result of [the d]efendant's allegedly deceptive act or practice" (alteration adopted, quotation marks and citation omitted)). The Court notes that Plaintiff did not withdraw his direct claims until after he had wasted a considerable amount of judicial resources as well as Defendants' legal resources, but nevertheless concludes that the mere fact of Plaintiff's repeated assertion of his indirect claim against Safety National was not so obviously without merit as to warrant sanctions under Rule 11.[33]

---

[33] For the same reason, the Court cannot conclude on this basis alone that the Action is "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose," as would be necessary to support the grant of sanctions under its inherent authority. *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021) (citation omitted); *see also id.* at 368 (describing the focus of the sanctions inquiry as "primarily"

47

In recognition of the Plaintiff's *pro se* status as well as the fact that he attempted to withdraw his duplicative claims prior to Safety National's sanctions motion, the Court determines that it would not be appropriate at this juncture to sanction plaintiff based purely upon his filing of the Complaint and Amended Complaint.  But this is not the sole basis upon which Safety National seeks sanctions.

b. Meritless claims, seriatim filings, and misrepresentations

Safety National also requests sanctions on several different bases that essentially boil down to the following: Plaintiff has repeatedly made, without complying with the Court's Individual Rules, seriatim filings that assert the same meritless arguments.  (Dkt. No. 94 at 24–27.)  He persisted in doing so even after Safety National directed him to binding authority that foreclosed his arguments.  (*Id.*)  Several of these filings involve fabricated quotes and, in one case, statutory language that simply does not exist (as described above).  (*Id.* at 15, 25–26.)  In some of these filings, Safety National says, Plaintiff continued to make baseless representations in his filings as to the Defendants' corporate citizenship.  (*Id.* at 25–26.)

Plaintiff has, indeed, filed an excessive number of repetitive motions without authorization.  By the Court's assessment, each of his primary arguments in favor of remand was raised in at least two Motions, as laid out further in footnotes.[34]  Many of these Motions were

---

on "the *intent* of the potentially sanctionable conduct, not on its *effect*").  Plaintiff's withdrawal of the direct claims further supports the conclusion that the filing of the Amended Complaint and Complaint alleging direct claims are not worth of sanctions. *See Jones*, 759 F. Supp. 3d at 540 (recognizing that it would be inappropriate to impose sanctions under the court's inherent authority where claims were withdrawn because the fact of withdrawal would undercut any finding of bad faith).

[34] Plaintiff asserted that there was a lack of unanimous consent in at least two Motions, (*see* Dkt. No. 10 at 3; Dkt. No. 25 at 3), that there was no federal question in this case in two Motions (*see* Dkt. No. 10 at 4; Dkt. No. 25 at 2–3), that a forum selection clause required

made without complying with the Court's premotion letter and premotion conference requirements, in violation of the Court's Individual Rules. (*See, e.g.*, Dkt. No. 71 (motion filed without letter or conference), Dkt. No. 90 (same).) *See* Individual Rules of Practice of the Honorable Kenneth M. Karas, II.A.[35] The Court also notes that, although this case remains at the Motion to Dismiss stage, Plaintiff's approach to litigation has created a cluttered and convoluted docket with over 130 docket entries, many of which request identical relief.

Courts evaluating requests for sanctions under Rule 11 have found that "[f]iling multiple motions requesting the same relief is an abusive litigation tactic that taxes the resources of the court and all of the parties to a lawsuit." *Tagle v. Bean*, No. 15-CV-1402, 2017 WL 2192969, at *1 (D. Nev. May 18, 2017); *see also Hodnett v. Medalist Partners Opportunity Master Fund II-a, L.P.*, No. 21-CV-00038, 2021 WL 535485, at *1 (S.D.N.Y. Feb. 12, 2021) (explaining that where "[the p]laintiffs filed a virtually identical motion" for "the second time in two months," the motion "border[ed] on an abusive litigation tactic and filing"); *Johnson v. Riverview Corr. Facility*, No. 22-CV-0934, 2022 WL 17581485, at *2 (N.D.N.Y. Sept. 13, 2022) ("[D]uplicative

---

litigation in state court in three Motions (*see* Dkt. No. 10 at 5–6; Dkt. No. 25 at 3; Dkt. No. 31 at 3–5), and that the SCRA necessitated remand in two or three Motions (*see* Dkt. No. 38 at 2; *see generally* Dkt. No. 46; Dkt. No. 66).

[35] In response to Safety National's argument on this point, Plaintiff quotes selectively from the Court's individual rules to suggest that he did not need to request a pre-motion conference and complied with the Court's rules. (*See* Dkt. No. 107 at 1.) The Court reminds Plaintiff that its rules provide, in relevant part, "For motions other than discovery motions, a pre-motion conference with the Court is required for making any motion, . . . To arrange a pre-motion conference . . . the moving Party shall submit a letter . . . not to exceed three pages . . . All Parties so served must submit a letter response . . . ." *See* Individual Rules of Practice of the Honorable Kenneth M. Karas, II.A. In the ordinary course, the part requesting to file a Motion would wait for the Court to either hold a premotion conference or order briefing based on the letter request.

filings are abusive, and result in a waste of judicial resources.").[36]  Plaintiff's practice of duplicative filings in this case was abusive and a waste of the Court's resources.  After all, "[m]otions are generally addressed" by the Court "in the order which they are filed." *Tagle*, 2017 WL 2192969, at *2.  "[F]iling a duplicative motion . . . will not speed up the Court's review of a movant's request" but usually "delays decision while a new round of responses and reply deadlines run." *Id.*  Indeed, in its previous Opinion, the Court warned Plaintiff that this conduct could result in sanctions, if Plaintiff were to persist in his practice of filing repetitive documents.  *See Fecteau*, 2025 WL 873018, at *20 n.23 ("Plaintiff is again reminded that— regardless of Plaintiff's pro se status—the repeated filing of frivolous claims and motions whose only possible explanation could be harassment and delay of proceedings may result in sanctions." (quotation marks and citation omitted)).

The Court also agrees with Safety National that several of Plaintiff's arguments were not colorable but rather clearly foreclosed by precedent.  Those arguments, in combination with Plaintiff's other improper litigation tactics, appropriately support the imposition of sanctions under Rule 11.  At a minimum, the Court determines that Plaintiff's repeated attempt to invoke the "forum selection clause" in an agreement to which he was not a party, and which, under binding Second Circuit precedent, could not compel the Defendants to proceed in state court, was not a good faith argument.  *See Margo*, 213 F.3d at 65 (affirming imposition of sanctions under Rule 11 where "there was no basis whatsoever upon which [the] plaintiffs' counsel could argue that this [c]ourt might read or change the [existing precedent] in a way that rendered it

---

[36] Plaintiff's sole response on this point is an assertion that each motion was "grounded in different legal theories" rather than duplicative of other motions.  (Dkt. No. 92 at 2.)  As explained in note 34, *supra*, this is flatly incorrect.

inapplicable" to the case); *Eisenberg v. Permanent Mission of Equatorial Guinea to United Nations*, No. 18-CV-2092, 2022 WL 1546673, at *2 (S.D.N.Y. Apr. 5, 2022) ("Rule 11 targets situations such as this one, where it is patently clear that a claim has absolutely no chance of success." (quotation marks and citations omitted)).  Safety National directed Plaintiff to this precedent—referencing, among other cases that are directly on point, *Yakin v. Tyler Hill Corp*, 566 F.3d 72, 75 (2d Cir. 2009)—but Plaintiff continued to press the point in his multitudinous filings, (*see e.g.*, Dkt. No. 95-18 at 2).  Accordingly, the three filings where Plaintiff made this argument, and which he did not retract during the 21-day safe harbor period, support the imposition of sanctions under Rule 11.[37]

The same is true of the filings where Plaintiff made arguments that involved the citation of fictitious statutory language: it is objectively unreasonable to invent statutory language and falsely claim that it has been applied in circumstances similar to those before the Court.  (*See* Dkt. No. 95-18 at 3–4 (Safety National's counsel informing Plaintiff that his filings "purport[ed] to quote and manufacture entirely non-existent statutory language").)  *See also Cojom v. Roblen, LLC*, No. 23-CV-1669, 2025 WL 3205930, at *3 (D. Conn. Nov. 17, 2025) (imposing monetary sanctions against attorney who included fictious case citations in his filings, on the basis that this practice led to the "expend[iture] of time and resources in investigating" the citations and, on the whole "imperil[ed] the integrity of our judicial process"); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023) ("[A] citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law.  An

---

[37] In reaching its determination as to whether Plaintiff's filings were properly subject to sanctions under Rule 11, the Court has not relied on filings that postdate the final Rule 11 notice.

attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system.").

In addition to sanctions under Rule 11, the Court determines that sanctions are warranted pursuant to its inherent authority. Courts have sanctioned litigants pursuant to their inherent authority after determining that duplicative filings were presented vexatiously, *i.e.* in bad faith, and those filings were without merit. *See Petreykov v. Int'l Fid. Ins. Co.*, No. 95-CV-1428, 1997 WL 36988, at *1 (E.D.N.Y. Jan. 7, 1997) (explaining that in light of plaintiffs' "two motions for discovery sanctions and two motions for default judgment" the Court would require that plaintiffs "obtain[] permission from [the] court" prior to making any further filings). Here, Plaintiff has inexplicably made duplicative motions and filed requests that repeatedly advance identical arguments in largely conclusory terms. He failed either to retract these filings or explain this tactic, even after Safety National's letters put him on notice that the duplicative filings were potentially vexatious and procedurally improper.

The false statements in Plaintiff's filings further support the Court's exercise of its inherent authority to sanction Defendants. Plaintiff both invented statutory language that, he claimed, was text from the SCRA and falsely purported to quote from *Conroy v. Aniskoff*, 507 U.S. 511 (1993) and *Gordon*, 637 F.3d at 454, while reciting language that appears nowhere in the text of either opinion. Even "a single misrepresentation" made in bad faith can form the basis of a court's exercise of its inherent power and permit the court to "put a stop to the party's chicanery." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368–69 (2d Cir. 2021). Although in some circumstances courts will make "some allowances for a pro se Plaintiff's failure to cite to proper legal authority," it is "no more acceptable for a pro se litigant to submit briefs with fake case citations than it is for a lawyer to do so." *Dukuray v. Experian Info. Sols.*,

No. 23-CV-9043, 2024 WL 3812259, at *11–12 (S.D.N.Y. July 26, 2024) (alteration adopted and citation omitted), *report and recommendation adopted*, No. 23-CV-9043, 2024 WL 3936347 (S.D.N.Y. Aug. 26, 2024).  But Plaintiff has offered no meaningful explanation as to why the fictious quotes appeared in his filings.  (*See* Dkt. No. 90 at 3 ("Where Plaintiff paraphrased statutory provisions, that was ordinary legal drafting, not fabrication.").)[38]  Instead, he continues to assert that these filings (namely, his motions seeking to invoke the SCRA) were "grounded in the statutory text, filed transparently on the docket, and later withdrawn or superseded as appropriate."  (Dkt. No. 110 at 8.)  The Court cannot imagine how invented quotes could be "grounded in the statutory text," and notes that, under both the Federal Rules of Civil Procedure and the basic conventions of written English, it is not "ordinary . . . drafting" (legal or otherwise) to invent language, place it in quotation marks, and represent that it appears in a specific source.  It is, in fact, "fabrication."   And, as explained, repeatedly filing requests for identical relief asserting identical arguments is not procedurally "appropriate."

---

[38] Indeed, Plaintiff attempted to challenge Safety National's choice to file many of its supporting materials *at all*, invoking an inapposite rule from the Court's Individual Rules. (*See* Dkt. No. 97.)  This further supports the conclusion that Plaintiff is not proceeding in good faith.
     Plaintiff later moved to strike a letter from Safety National to the Court which attached an additional item of correspondence from Plaintiff to Safety National's counsel on the same basis, and further contends that the materials are "irrelevant, prejudicial, and inflammatory." (Dkt. No. 107 at 1.)  The Court concludes, however, that this submission—which is largely duplicative of a similar request that the Court already denied, (Dkt. No. 105)—is (1) in compliance with its Individual Rules, as it was attached as an exhibit in support of Safety National's Motion; (2) clearly relevant; (3) not properly stricken, as they bear directly on the subject matter at issue, *see Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 20-CV-9155, 2025 WL 35003, at *10 (S.D.N.Y. Jan. 6, 2025).  The Court also denies Plaintiff's requests that the materials be sealed, as Plaintiff has not demonstrated any conceivable basis for the Court to determine that his right to privacy in those materials (if such a right exists at all) outweighs either the First Amendment or common law right of access.  The Motion at docket number 107 is therefore denied.

The conclusion that Plaintiff made these filings in bad faith is bolstered by the fact that Plaintiff has been warned on multiple occasions, by both this Court and Magistrate Judge McCarthy, that he must "stop his intimidating, harassing, and threatening behavior, or he may face sanctions, including dismissal of his case." (Dkt. No. 95-6 (reproducing a docket entry from Magistrate Judge McCarthy in the Related Action).)[39] *See Fecteau*, 2025 WL 873018, at *5 n.12 (advising Plaintiff that "the repeated filing of frivolous claims and motions whose only possible explanation could be harassment and delay of proceedings may result in sanctions" (quotation marks and citation omitted)); *id.* at *16 n.21 ("Plaintiff is warned that if he persists in contacting Safety National or attempting to involve it in this Action any further, without valid reason, the Court will consider sanctions.").[40]  The Court's conclusion that Plaintiff's conduct in this case constituted "bad faith" activity is underscored by the disdainful and derogatory comments that Plaintiff has made in reference to counsel and other entities involved in this and the Related Action.[41]

---

[39] The Court notes that Plaintiff appears to think that his behavior in other actions cannot provide support for sanctions in this Action. (Dkt. No. 106-1 at 3.)  He is incorrect.  *See, e.g.*, *Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962, 2025 WL 1183676, at *8 n.6 (S.D.N.Y. Apr. 4, 2025) (noting "[t]he imposition of sanctions against [the individual] on prior occasions can inform the bad faith inquiry as well as assessment of what level of deterrence may be required of a present sanction" and collecting cases looking towards patterns of conduct in other cases), *report and recommendation adopted*, No. 22-CV-7962, 2025 WL 1184012 (S.D.N.Y. Apr. 23, 2025).

[40] Plaintiff attempts to argue that this warning was limited to "the underlying *Mount Vernon* or sister matter."  (Dkt. No. 110 at 8.)  The Court does not think there was any ambiguity in its warning that Plaintiff could face sanctions "if he persists in contacting Safety National."

[41] (*See, e.g.*, Dkt. No. 90-3 at 2 (email sent during proceedings in the Related Action, where Plaintiff attached a "formal demand letter regarding Safety National's indemnification obligations," and referenced a book "Delay, Deny, Defend," which, he said, "highlights the structural challenges caused by insurance practices," which "have real world consequences"); *id.* (in same email, stating "[t]he recent tragic shooting of a CEO serves as a stark example of the frustration people experience due to the endless cycle of delays and denials imposed by

c. <u>Appropriate Relief</u>

When the Court imposes sanctions pursuant to Federal Rule of Civil Procedure 11, any sanction must be "limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4); *In re Sept. 11th Liab. Ins. Coverage Cases,* 243 F.R.D. 114, 130 (S.D.N.Y. 2007) (citing what was, before a 2007 amendment, part of Rule 11(c)(2)). Among the factors to be considered in making this determination are:

> (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern or activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law;

---

insurance companies"); Dkt. No. 92 at 2 (accusing opposing counsel of "slander and defamation" in filings); Dkt. No. 95-5 at 4–5 & n.1 (stating to opposing counsel that opposing counsel was "able to transcend the limitations of [his legal] education [at a major law school] and emerge as an advocate whose arguments demand respect," calling the major law school the "red-headed stepchild of the Ivy League," and requesting (seemingly sarcastically) that, based on counsel's "profound understanding of legal ethics and procedural integrity," he should "recognize the gravity of [an asserted] misrepresentation . . . and take swift corrective action to rectify it"); *id.* at 8–9 (accusing opposing counsel of a "willful failure to meet basic due diligence obligations," and claiming, among other things, that Plaintiff would "file a formal complaint with the New York State Bar" against counsel); Dkt. No. 95-15 at 3 (requesting that Safety National's counsel "withdraw the [case's] [r]emoval" and asserting that "[g]iven your firm's and the company you represents['] demonstrated history of violating the rights of servicemembers, this appears to be the right thing to do"); Dkt. No. 95-16 at 2 (characterizing counsel's continuing to litigate the case in federal court as "reflect[ing] poorly on all parties involved, including the Court"); Dkt. No. 106 at 1 ("[Safety National's] filing is the legal equivalent of a fire alarm pulled by the arsonist."); *id.* at 2 (describing himself as "granting counsel a fairness they would never extend in return"); Dkt. No. 106-1 at 2 ("Since Safety National's counsel has recently developed a newfound interest in court rules—at least when applied to a pro se litigant—I conducted my own review of their compliance specific to the latest Motion for Sanctions."); *id.* ("Keeping with Safety National's established habit of violating everything under the sun . . ."); Dkt. No. 106-2 at 4 (stating that Safety National's counsel "cannot be this dumb"); Dkt. No. 116-1 at 2 (accusing the Court of being "biased towards" Defendants and telling Safety National's counsel that Plaintiff "look[ed] forward to seeing [individuals affiliated with Safety National] featured in the next Coldplay Kiss Cam scandal").)

55

(7) what amount, given the financial resources of the responsible person, is needed
   to deter that person from repetition in the same case.

*Colliton v. Cravath, Swaine & Moore LLP,* 08-CV-0400, 2008 WL 4386764 at *12 (S.D.N.Y.

Sept. 24, 2008), *citing* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments; *see*

*also Ho Myung Moolsan Co., Ltd. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239, 265

(S.D.N.Y. 2009) (same).

The Court makes the following determinations: for the reasons described above, the

record supports the conclusion that the improper conduct was willful, in particular because

Plaintiff relied on non-existent statutory language and misrepresented cases that he cited.  The

Court also notes that, between Plaintiff's behavior in this Action and the Related Action, it

appears that this behavior is part of a pattern of targeting Safety National, "rising to the level of a

personal crusade" against the company.  *See Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d

465, 506 (E.D.N.Y. 1998). (*See also* Dkt. No. 95-5 at 2 (Plaintiff, in a letter to Safety National's

counsel and other attorneys in the Related Action, stating that he intends to "pursue all available

legal and regulatory avenues to protect [his] rights, vindicate the interests of justice, and uphold

the integrity of our judicial system" in the face of asserted "egregious bad faith insurance

practices" by "Safety National and Tokio Marine Holdings").)  Plaintiff's actions required

significant expenditure of Safety National's resources, (Dkt. No. 95 ¶ 58 (counsel averring that

Safety National had incurred over $53,000 in legal fees since Plaintiff filed his Amended

Complaint)), as well as the Court's own time.  Further, the Court is troubled by Plaintiff's

multiple attempts to prevent the Court from considering evidence of his interactions with Safety

National's counsel, or otherwise to limit the Court's inquiry on Safety National's sanctions

motions.  (*See, e.g.*, Dkt. No. 110 at 14 (accusing Safety National's counsel of "disregard[ing]"

the safe harbor provisions of Rule 11 "by publicly filing multiple safe-harbor notices" and

"weapon[izing]" the legal process, even though these materials were directly relevant to the Safety National's sanctions motion).)[42]

The Court is not convinced, however, that either sanctions "tantamount to dismissal" with prejudice of Plaintiff's entire cause against Defendants or "monetary sanctions" are appropriate in these circumstances; the former are the "harshest sanction" available to the district court, and the latter are "disfavored against pro se litigants." *Kumaran v. Nat'l Futures Ass'n*, No. 20-CV-03668, 2024 WL 3429128, at *3 (S.D.N.Y. July 16, 2024) (citations omitted). Moreover, it is not clear from the record that Plaintiff was on notice of the possibility that he would have to pay attorney's fees if he continued to pursue these claims against Safety National. Any lack of awareness on Plaintiff's part would weigh against an award of attorney's fees against him. *See, e.g.*, *Azzarmi v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 20-CV-9155, 2025 WL 35003, at *8 (S.D.N.Y. Jan. 6, 2025) (noting that "ordering a pro se litigant to pay attorney's fees is appropriate where the litigant has been put on notice of the possibility of such a sanction" and collecting cases).

Instead, the Court determines that a limited filing injunction is appropriate. When considering a request, as Safety National lodged here, for a filing injunction, the Court considers the following factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts

---

[42] As should be clear, Plaintiff has also consistently mischaracterized his own filings in this and the Related Action. (*See, e.g.*, Dkt. No. 90 at 3 (arguing that Plaintiff's earlier threatening language towards Safety National in the Related Action was not, in fact, a threat, and but rather simply "referenced a widely reported CEO shooting as an illustrative example of public frustration with systemic claim denials").)

and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986).

As to the first factor, Plaintiff has a history of litigation against Safety National, a company that he has doggedly pursued through federal and state court proceedings since he received the coverage denial in the Related Action. *See De Oliveira v. Tenet Healthcare*, No. 25-CV-1683, 2025 WL 3241217, at *25 (S.D.N.Y. Nov. 20, 2025) ("litigious history" supports sanctions, including where party "repeatedly assert[s] the same claims in [a] slightly altered guise" and those claims "have been resoundingly rejected by the courts" (quotation marks and citation omitted)). "Having presided . . . over this case and [P]laintiff['s earlier] lawsuit, the Court is familiar with [P]laintiff['s] duplicative and meritless [arguments]." *Vidurek v. Koskinen*, No. 17-CV-9064, 2018 WL 3597644, at *13 (S.D.N.Y. July 25, 2018) (citations omitted), *aff'd*, 789 F. App'x 889 (2d Cir. 2019). And, based on Plaintiff's continued disregard of warnings from this Court as well as Magistrate Judge McCarthy, the Court concludes that Plaintiff is "likely to continue to abuse the judicial process and harass" Safety National regardless of further warnings from the Court. *Safir*, 792 F.2d at 24.

As to the second factor, and for the reasons described above, it is not plausible that Plaintiff has an objective good faith expectation of prevailing on any of his direct claims until he has received a determination in the underlying action, and Plaintiff can have no hope of prevailing on his N.Y. GBL § 349 claim on the facts alleged here. *See De Oliveira*, 2025 WL 3241217, at *25. As to the third and fourth factors, although he is unrepresented, Plaintiff has needlessly imposed a great deal of expense to other parties and a burden on court personnel. *Id.* (concluding that, when faced with a "torrent of paperwork," as occurred here, sanctions were appropriate in light of "incredible burden on members of the judiciary" (citation omitted)).

58

As to the fifth factor, the Court is convinced that a tailored filing injunction is no greater than necessary to protect the Parties' interests and avoid overburdening the courts. In cases involving repetitive filings, courts regularly impose filing injunctions as a means to manage their dockets. *See, e.g.*, *Pina v. United States*, No. 20-CV-1371, 2022 WL 18046792 (S.D.N.Y. Dec. 7, 2022) (recommending limited filing injunction tailored to "specific abuse at issue" that would apply only to the case before the court), *report and recommendation adopted,* No. 20-CV-1371, 2022 WL 17959469 (S.D.N.Y. Dec. 27, 2022); *Azeez v. City of New York*, No. 16-CV-342, 2021 WL 3578500, at *3 (E.D.N.Y. Aug. 13, 2021) ("Additionally, because Plaintiff has submitted repetitive filings raising the same rejected arguments over and over again, the R&R recommends imposing a filing injunction on Plaintiff. As no party has objected to this portion of the R&R, the court reviews it for clear error. Having found none, the recommendation is adopted." (alterations adopted, citations and quotation marks omitted)); *George v. New York State Div. of Parole*, 685 F. App'x 30, 31 (2d Cir. 2017) (summary order) (affirming district court decision imposing filing injunction where petitioner "filed five essentially duplicative motions for reconsideration"); *Vidurek*, 2018 WL 3597644, at *14 (imposing filing injunction on pro se plaintiffs in the face of "duplicative and meritless complaints").[43] This injunction is imposed pursuant to Federal Rule

---

[43] The Court notes that, as required under Second Circuit precedent, Plaintiff received notice of the possibility of a filing injunction in the form of Safety National's Motion, and that he had an opportunity to be heard as he filed multiple responsive documents to that request. *See Zappin v. Cooper*, No. 23-165, 2024 WL 3084015, at *4 (2d Cir. June 21, 2024) (summary order) (affirming grant of filing injunction over challenge based on lack of notice, where party moved for injunction, and party "had the opportunity to, and in fact did, respond to that motion"); *Tibbetts v. Stempel*, No. 97-CV-2561, 2005 WL 2146079, at *7 (D. Conn. Aug. 31, 2005) (imposing filing injunction where party filed "three memoranda in response to the defendants' motion for a permanent injunction"), *aff'd sub nom. Tibbetts v. Dittes*, 167 F. App'x 851 (2d Cir. 2006) (summary order); *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (reasoning that party should receive "notice sufficient to allow [the party] to prepare a response" to request for sanctions).

of Civil Procedure 11(c)(1), (4), and, in the alternative, the Court also determines that it is an appropriate exercise of its inherent authority for the reasons described above.

Accordingly, Plaintiff is hereby temporarily enjoined from pursuing claims against Safety National arising from the insurance policy issued to the City of Mount Vernon, and/or the availability of coverage under the Policy, and/or the handling of claims under the Policy in connection with his civil rights claim in the Related Action *Fecteau v. City of Mount Vernon, et al.*, No. 23-CV-9173. Plaintiff will remain so enjoined until a decision has been rendered on the merits in the Related Action.

Under the terms of this injunction, Plaintiff may not file any further motions, papers, or submissions as against Safety National in this Action or the Related Action absent leave of the Court. Plaintiff may seek such leave by submitting a **brief** (no more than two pages) letter motion to the Court. Such letter may contain **only** a brief description of the motion, paper, or submission Plaintiff seeks to file. It may **not** include the motion, evidentiary materials, supporting memoranda of law, or anything that is not mentioned in the preceding sentence. This injunction is not limited to actions in federal court; it applies to future actions filed in state court so long as the injunction remains in effect. *See Pathways, Inc. v. Dunne*, 329 F.3d 108, 114 (2d Cir. 2003) ("The Anti–Injunction Act does not prevent a federal court from restraining a party from instituting future state proceedings.").

### III.  Conclusion

The Court has considered Plaintiff's remaining arguments and found them without merit. For the reasons set forth above, Defendants' Motions to Dismiss are granted, and the case is dismissed without prejudice. Defendant Safety National's Motion for Sanctions is granted in part and denied in part. Plaintiff is hereby temporarily enjoined from pursuing claims against

60

Safety National arising from the insurance policy issued to the City of Mount Vernon, and/or the availability of coverage under the Policy, and/or the handling of claims under the Policy in connection with his civil rights claim in the Related Action, as described above. The other Motions resolved in this Opinion and Order are subject to the dispositions described in the body of the Opinion. The Clerk of the Court is respectfully directed to terminate the pending Motions at Dkt. No. 7, Dkt. No. 9, Dkt. No. 30, Dkt. No. 33, Dkt. No. 38, Dkt. No. 44, Dkt. No. 33, Dkt. No. 53, Dkt. No. 54, Dkt. No. 58, Dkt. No. 59, Dkt. No. 63, Dkt. No. 64, Dkt. No. 65, Dkt. No. 71, Dkt. No. 90, Dkt. No. 93, Dkt. No. 107, Dkt. No.108, Dkt. No. 111, and Dkt. No. 129. The Clerk of Court is further directed to mail a copy of this Order and Opinion to Plaintiff, and to close this case.

SO ORDERED.

Dated:    March 25, 2026
          White Plains, New York

KENNETH M. KARAS
United States District Judge